OPINION *Page 2 
{¶ 1} Appellant, Karen Moore, appeals the trial court's grant of a writ of restitution in favor of appellee, Showe Management Corp.
 STATEMENT OF FACTS AND CASE {¶ 2} On February 7, 2000, Karen Moore (hereinafter "Moore"), entered into a lease with Showe Management Corporation dba Pataskala Green III Apartments, (hereinafter "Showe Management"). The lease agreement acknowledged Moore was eligible for subsidized housing. Moore was obligated to pay a monthly fee which was less than the market (unsubsidized) rent on the housing. Specifically, the lease stated Moore's monthly rent was being subsidized by the United States Department of Agriculture (USDA) Rural Housing Service.
 {¶ 3} With regard to the payment of rent, Moore's lease agreement stated that the rental amount was due "on the first day of the month at the rental office." The lease also stated if the Tenant did not pay the full amount of rent by the close of business hours on the 10th day of the month, the Landlord could collect a fee of $10.00 on the 11th day of the month. The lease further stated: [the landlord] "reserves the right to refuse payments offered on or after the 11th day of the month," and that the landlord would not accept any late rent payments unless late charges were included. Finally, the lease stated the acceptance of rental payments after the due date would in no manner constitute a waiver of landlord's rights.
 {¶ 4} With regard to the termination of the tenancy, the lease stated that any termination of the lease had to be carried out in accordance with the Rural Housing Service Regulations, State and Local law and the terms of the agreement. The lease *Page 3 
stated that the Landlord could terminate the agreement for "the Tenant's material noncompliance with the terms of this agreement."
 {¶ 5} The lease defined the term "material non-compliance" in pertinent part, as "(1) one or more substantial violations of the lease," "(2) repeated minor violations of the lease" and "(4) nonpayment of rent or any other financial obligation due under the lease beyond any grace period permitted under State law."
 {¶ 6} On March 12, 2007, Showe Management served Moore with a Notice to Leave Premises for nonpayment of rent. In the notice, Showe indicated appellant had failed to pay her rent on or before March 1, 2007.
 {¶ 7} On March 30, 2007, Showe Management filed a forcible entry and detainer action (FED) against Moore, in Licking County Municipal Court Case Number 07CVG869, for the immediate possession of Moore's residence at 199-C Poff Drive. Showe Management sought restitution of the premises for nonpayment of rent on or before March 1, 2007.
 {¶ 8} On April 13, 2007, Showe Management presented the trial court with an agreed judgment entry signed by both counsel for Showe Management and Moore acting pro se. Pursuant to the agreed judgment entry, restitution of the premises was granted to Showe Management within 31 days. The agreed entry stated in pertinent part, "[d]efendant(s) hereinafter may tender any monies owed to Plaintiff, who may accept same without prejudice to and without waiver of plaintiff's right to enforce its judgment for restitution granted herein."
 {¶ 9} On April 18, 2007, Moore, by and through counsel, filed a motion to vacate the agreed entry and moved to dismiss the underlying FED action. In the motion, Moore *Page 4 
argued she paid her monthly rent from child support for her two children, which she received sporadically and at different times of the month. Moore argued that for this reason her payments were often late and had been repeatedly accepted by agents of Showe Management. Moore argued that after she was served with the FED complaint she contacted an agent of Showe Management and was advised her late rent payment would be accepted in exchange for her signature on a document, i.e. the agreed judgment entry. On April 6, 2007, Moore went to the rental office, paid her late rent for March 2007 with an additional late fee, made a future payment for April 2007, and signed a document. Moore stated she left the office believing the matter was resolved. She argued that she did not understand that the document was an agreed judgment entry for restitution of the premises. She argued the actions of Showe Management were fraudulent and the judgment of restitution should be vacated.
 {¶ 10} Moore also moved the trial court to dismiss the FED action for lack of jurisdiction. In support, Moore argued Showe Management's acceptance of future rent payments, i.e. April's payment, after service of the ten day notice to leave the premises, waived the notice requirement. Moore argued the ten day notice requirement was a condition precedent to the trial court's jurisdiction over the FED proceeding and since notice had been waived the trial court lacked jurisdiction to proceed.
 {¶ 11} On April 20, 2007, Showe Management filed a response to Moore's motions to vacate and dismiss. In the response, Showe Management argued the agreed entry was not induced by fraud and Moore failed to establish grounds in her affidavit which would support the motion to vacate. Showe Management also argued the *Page 5 
agreed entry permitted Showe to accept future rent without waiving the right to enforce judgment of restitution of the premises.
 {¶ 12} On May 11, 2007, the trial court granted Moore's motion to vacate the judgment entry of restitution of the premises filed on April 13, 2007, denied the motion to dismiss and rescheduled the matter for hearing on May 25, 2007.
 {¶ 13} On July 17, 2007, after the May 25, 2007, hearing, the trial court again granted Moore's motion to vacate the judgment of restitution and granted Moore's motion to dismiss for lack of jurisdiction. In the entry, the trial court stated in pertinent part as follows:
 {¶ 14} "Based on the evidence presented at the hearing, the Court finds that the Defendant made future rent payments which were accepted by the plaintiff's representatives at the time she signed the agreement. As a result the Court is without jurisdiction to proceed on the plaintiff's complaint and enforce the Agreed Judgment Entry submitted to the Court at the original eviction hearing. In Shimko v. Marks (1993),91 Ohio App. 3d 458, the Fifth District Court of Appeals reiterated that by accepting future rent payments after serving a Notice to Vacate, the landlord is deemed to have waived the Notice to Vacate as a matter of law since such acceptance is inconsistent with the landlord's Notice to Vacate.
 {¶ 15} "In this case, it is undisputed that the defendant signed the Agreed Judgment Entry on April 6, 2007. It is also undisputed that she paid, and the plaintiff accepted, on that date her rental payment for the month of March, the March late fee, and her April payment through the end of the month. At that point she paid ahead on her rent and plaintiff accepted those future rent payments. Accordingly, the Court finds *Page 6 
as a matter of law, plaintiff waived the Notice to Vacate which [was] served on the defendant on March 12, 2007.
 {¶ 16} "Accordingly, defendant's Motion for Relief from Judgment and Motion to Dismiss Plaintiffs Complaint are hereby granted and plaintiffs complaint is dismissed at its costs."
 {¶ 17} On August 15, 2007, Showe Management filed a Notice of Appeal from the judgment entry granting Moore relief from judgment and dismissal of the FED for lack of jurisdiction in related case number 07CA102.
 {¶ 18} As a result of the dismissal, Moore remained on the premises and continued to tender rent payments from May 2007 through December 2007. Moore's rent payment tendered May 7, 2007, was accepted by Showe. However, Moore's rent payments tendered June 7, July 10, August 7, September 10, October 11, and November 9 were rejected by Showe. In each instance, Showe Management returned the payments to Moore with a written letter regarding the reasons for refusal. Each of the letters stated that rent was due on the 1st of the month.
 {¶ 19} Moore did not tender December's rent check during the grace period provided in the lease. On December 11, 2007, an agent of Showe Management served Moore with a 10 day notice to leave the premises for non-payment of December 2007 rent. Appellant did not vacate the premises.
 {¶ 20} On December 28, Moore tendered December's payment in the amount of $45, constituting $35 rent plus the $10 late fee. The money order demonstrates on its face that it was purchased on December 10, 2007. *Page 7 
 {¶ 21} On December 28, 2007, Showe Management filed a second complaint for forcible entry and detainer in Licking County Municipal Court Case Number, 07CVG2268, for nonpayment of rent on or before December 1, 2007. Showe Management further alleged Moore owed past due rent from March 1, 2007, plus late charges and damages. Moore argued that Showe Management's refusal to accept her payments, and the past practice of accepting late payments, prevented Showe Management from seeking eviction for nonpayment of rent.
 {¶ 22} On January 15, 2008, the matter came before the trial court for hearing.
 {¶ 23} At the evidentiary hearing, Jackie Henry, Showe Management's senior property manager, testified that Moore executed a lease agreement for subsidized housing on February 7, 2000. Pursuant to the lease agreement for subsidized housing, Moore's rent was $35.00 per month. She testified that, pursuant to the lease, the rent payment was due on the first day of each month. On December 11, 2007, she prepared and delivered to Moore a 10-day eviction notice because on that date appellant was in default of payment of December rent in the amount of $35.00. She testified that, as of the hearing date, Moore was still in default. She admitted she had accepted late rent from Moore in the past, but as a result of the prior FED action, the corporation had refused Moore's tender of rent payments every month from June 2007, through December 2007. She could not answer whether the corporation would have refused a timely December payment, as she would have "called corporate" to speak to her attorney before accepting or rejecting Moore's rent. Tr. 11. However, she stated Moore had not tendered the December rent on or before December 10, 2007, the late payment deadline. *Page 8 
 {¶ 24} Karen Moore testified that she lived in the residence for approximately eight years. She stated that, in accordance with the lease, her rent in the amount of $35.00 was due and owing on the 1st day of the month but the lease provides for a ten day grace period. She admitted that she has not always paid her rent either on time or within the grace period, but generally she pays her rent during the second or third week of the month. She testified, "The latest I've paid in a current month was October 30th of 2006, and the — I've had two occasions where I paid rent the following month, the beginning of the following month." Tr. 15. She stated that in the past, the late payments were always accepted. She testified Showe Management had not given her any written notice that her rent would only be accepted if it was tendered in strict compliance with the lease agreement.
 {¶ 25} Moore presented receipts showing the acceptance of late payments in July, August, October, November and December of 2006. She also presented receipts showing that on April 6, 2007, Showe accepted rent payments for March 2007, and April 2007, in the total amount of $80.00.
 {¶ 26} Moore stated in May of 2007, Showe Management filed a forcible entry and detainer action against her which was dismissed and was on appeal. She stated that, since the dismissal, Showe Management had refused her tender of rent during the grace period. In each instance, Showe Management returned her check and sent her both a letter of explanation and a notice of proposed termination of residency for failure to pay rent in a timely manner. Interestingly, the June letter was dated "June 7, 2007," for failure to tender rent until after "June 10th." The July, August, September, October, *Page 9 
and November letters advised Moore she was under a 30 day notice of proposed lease termination for material non-compliance with the lease agreement.
 {¶ 27} Moore testified that in December of 2007, she tendered payment of rent on the 28th day of the month and tendered timely payment of her January, 2008 rent. Neither payment was accepted. Moore received two letters in response. In one letter, Showe Management advised Moore she was under a "10-day and/or 3-day notice to leave the premises for a lease violation." The letter further advised Moore that Showe Management intended to enforce termination by bringing a judicial action. The second letter stated, "On January 9, 2008, you came into the office with one month rent in the amount of $35.00. At that time it was returned to you due to the fact that you still owe past rent in the amount of $315.00. At this time you need to tender all rent owed to Pataskala Green Apartments in the amount of $350.00. You are under a 10-day notice to leave premises for a lease violation and your Landlord has elected to enforce termination by bringing a judicial action." At the hearing, Moore testified she had all the money orders available and was willing to turn them over to Showe Management as payment for past due rent. Showe Management refused to accept the checks.
 {¶ 28} On January 29, 2008, the trial court entered judgment in favor of Showe Management for the restitution of the premises. The court held that Showe Management had served Moore with notice as required by R.C. 1923.04 and Moore was in default of the lease obligation on the date of service. The court found Moore continued to remain in possession of the premises and Showe Management had established a right to immediate possession. The trial court granted the judgment of restitution and ordered Showe Management restored to the real estate. The trial court *Page 10 
further issued a writ of restitution pursuant to R.C. 1923.13 to be served forthwith thereby causing Moore to be removed immediately from the premises. The issue of monetary damages was continued.
 {¶ 29} On January 30, 2008, Moore filed an appeal from the judgment of restitution setting forth the following assignments of error:
 {¶ 30} "I. THE TRIAL COURT ERRED IN GRANTING THE EVICTION BECAUSE APPELEE'S UNEQUIVOCAL REFUSAL TO ACCEPT RENT FOR SIX CONSECUTIVE MONTHS EXCUSED APPELLANT KAREN MOORE FROM SUBSEQUENTLY TENDERING HER RENT, AS IT WOULD HAVE BEEN A VAIN AND USELESS ACT.
 {¶ 31} "II. THE TRIAL COURT ERRED IN GRANTING THE EVICTION BECAUSE APPELLEE ESTABLISHED A PATTERN AND PRACTICE OF ACCEPTING LATE RENT PAYMENTS FROM APPELLANT KAREN MOORE, AND THEREBY WAIVED THE RIGHT TO EVICT MS. MOORE FOR LATE PAYMENTS OF RENT.
 {¶ 32} "III. THE TRIAL COURT ABUSED ITS DISCRETION BECAUSE IT FAILED TO CONSIDER APPELLANT KAREN MOORE'S EQUITY DEFENSE, AND BECAUSE THE RELIEF OF RESTITUTION WAS CONTRARY TO THE EQUITABLE PRINCIPLES AND WAS NOT CLEARLY REQUIRED TO MAKE APPELLEE WHOLE."
 {¶ 33} On February 8, 2008, the trial court granted Moore's motion for a stay of the Writ of Restitution and set a supersedeas bond in the amount of $595.00, representing $345.00 due in back rent and 25% for costs incurred. The court further ordered Moore to pay her monthly rent to the Clerk on or before the 10th day of each succeeding month. *Page 11 
 {¶ 34} On July 24, 2008, Moore filed a "Notice" with this Court advising this Court that on July 9, 2008, she had vacated the residence at issue. In the notice, Moore urged the Court to hear the appeal arguing the appeal is not moot because it involves an issue of great public importance, the resolution of the issues would benefit others who are similarly situated, and/or that the issues are capable of repetition, yet evading review.
 {¶ 35} Since Moore vacated the premises, the first issue which must be addressed by this Court is whether the appeal is moot, and if the appeal is moot, whether it should be decided on the merits by this court.
 {¶ 36} Generally, vacation of the residence at issue renders the issues in a forcible entry and detainer action moot, thereby depriving the Court of jurisdiction to proceed. The Ohio Supreme Court has stated that forcible entry and detainer actions decide the right to immediate possession of property and "nothing else." Seventh Urban, Inc. v. Univ.Circle Property Dev., Inc. (1981), 67 Ohio St.2d 19, 25, n. 11,423 N.E.2d 1070. "Once a landlord has been restored to property, the forcible entry and detainer action becomes moot because, having been restored to the premises, there is no further relief that may be granted to the landlord." United States Secy. of Hous. and Urban Dev. v.Chancellor (Feb. 25, 1999), 8th Dist. No. 73970. See Crossings Dev. Ltd.Partnership v. H.O.T., Inc. (1994), 96 Ohio App.3d 475, 479-80,645 N.E.2d 159; Reck v. Whalen (1996), 114 Ohio App.3d 16, 19,682 N.E.2d 721. Therefore, a tenant's vacation of the premises renders all the issues in regards to a forcible entry and detainer action moot.United States Secy. of Hous. and Urban Dev., supra. See Crossings Dev.Ltd. Partnership, 96 Ohio App.3d at 480, 645 N.E.2d 159; Alex-BellOxford Ltd. Partnership v. Woods (June 5, 1998), 2nd Dist. No. 16038. Accordingly, we *Page 12 
find the issue in this case to be moot because Showe Management's immediate possession is no longer an issue.
 {¶ 37} However, this Court may address an otherwise moot issue "where the issues raised are `capable of repetition, yet evading review.'"Hocking Metropolitan Housing Authority v. Martin, Hocking App. No. 97CA9 (March 5, 1998), 1998WL100416 citing State ex rel. Beacon JournalPublishing Co. v. Donaldson (1992), 63 Ohio St.3d 173, 175,586 N.E.2d 101, quoting State ex rel. Plain Dealer Publishing Co. v. Barnes (1988),38 Ohio St.3d 165, 527 N.E.2d 807, paragraph one of the syllabus. Additionally, this Court may consider an appeal where the resolution of the moot issue(s) is of great public importance or will benefit others who are similarly situated. See, Franchise Developers, Inc. v.Cincinnati (1987), 30 Ohio St.3d 28, 505 N.E.2d 966, paragraph one of the syllabus; Stacy v. Carr (Feb. 20, 1992), Adams App. No. 519, unreported.
 {¶ 38} In this case, the forcible entry and detainer action involves the right of possession to subsidized housing. Ohio courts have recognized that a tenant has a constitutionally protected interest in continued occupancy of federally subsidized housing. Vienna Forest Apts.v. Passmore, Butler App. No. CA2004-05-104, 2005-Ohio-2368
at paragraph 18, citing, Gorsuch Homes, Inc. v. Wooten (1992), 73 Ohio App.3d 426,432, 597 N.E. 2d 554. In a similar case, the appellate court held that an appellant who received subsidized housing had a continuing interest in the outcome of the appeal from a forcible entry and detainer action since an unfavorable court proceeding could affect the tenant's eligibility for future federal housing assistance. The court held that "other tenants are similarly situated and would benefit from this court's *Page 13 
resolution of the issue." Sandefur Management Co. v. Minor, Franklin App. No. 84AP-220, (April 18, 1985), 1985 WL 10250.
 {¶ 39} In this case, during oral argument, Moore similarly argued that her appeal, although moot, should be considered by this Court because an unfavorable court proceeding could affect her eligibility for future federal housing assistance. We agree. Accordingly, we shall address appellant's assignments of error.
 I {¶ 40} In the first assignment of error, Moore argues that she was excused from tendering her rent in December 2007, because it would have been a vain and useless act. She argues that the trial court erred in granting judgment and a writ of restitution in favor of Showe on the grounds that she failed to pay December's rent.
 {¶ 41} In response, Showe argues Moore was put on notice by the prior FED action and monthly notices and letters of refusal that Showe was seeking strict compliance with the lease terms, meaning Moore's rent was due on the first day of the month. Showe further argues that, pursuant to the terms of the lease, Showe was within its rights to reject the tender of any rent which was not in compliance with the lease agreement including rent payments which were made beyond the 10 day grace period and/or did not include a late fee.
 {¶ 42} Generally, the law does not require an act which is either impossible or useless, i.e. a vain or useless act. See, George WiedemannBrewing Co. v. Maxwell (1908), 78 Ohio St. 54, 66, 84 N.E. 595;Clarence Mining, Inc. v. Hanner (June 8, 1981), Tuscarawas App. No. CA-1503, 1981 WL 6294. For example, "when the act of one party, to whom another is bound to tender money, services, or goods, clearly *Page 14 
indicates that the tender, if made, would not be accepted, the other party is released from technical performance of his agreement" because "the law never requires a vain thing to be done." Manhattan Life Ins.Co. v. Smith (1886), 44 Ohio St.156, 170, 5 N.E. 417, quoting Isham v.Greeham (Super.Ct. Cincinnati 1854), 3 Ohio Dec. Rep. 362, 1 Handy 357. See also, Professional Investments of Am., Inc. v. Ross (Dec. 9, 1982), Cuyahoga App. No. 44540, 1982 WL 2579. Moreover, a tenant's obligation under a rental agreement to pay or tender rent can be excused where the landlord, through its conduct, renders the requirement to tender meaningless, vain or useless. Greenbriar Estates v. Eberle,130 Ohio Misc.2d 11, 14-15, 2005-Ohio-1139, 824 N.E.2d 172.
 {¶ 43} Moore's rent payments for June, July, August, September, and November of 2007 were all tendered during the 10-day grace period. Her check for October was tendered on the 11th, and included the $10 late fee.
 {¶ 44} Paragraph two of Moore's lease with Showe states that the initial term of the agreement began on February 7, 2000, and would end on February 28, 2001. The agreement would renew automatically for successive terms of one year each unless terminated as provided by paragraph 24 of the agreement. Paragraph 3 of the lease provides that rent is due on the first day of the month at the rental office.
 {¶ 45} Regarding payment of rent, paragraph 5 of the lease provides in pertinent part:
 {¶ 46} "If the Tenant does not pay the full amount of the rent shown in paragraph 3 by the close of business hours on the 10th
day of the month, the Landlord may collect a fee of $10.00 on the 11th day of the month. The Landlord may not terminate this Agreement for failure to pay late charges, but may terminate this Agreement for *Page 15 
nonpayment of rent, as explained in paragraph 24 . . . Landlord reserves the right to refuse payments offered on or after the 11th
day of the month. Landlord will not accept any late rents unless late charges and/or bad check charges are included. The Tenant agrees further that acceptance [by the] Landlord of rental payment after the due date shall [in] no manner constitute a waiver of Landlord's rights in the event of Tenant's failure to make rental payments as herein prescribed and agreed, nor will it be considered as a change in the date upon which Tenant is to pay said rent . . ."
 {¶ 47} Paragraph 24 deals with changes to the rental agreement:
 {¶ 48} "The Landlord may, with the prior approval of the Rural Housing Service, change the terms and conditions of this Agreement. Any changes will become effective only at the end of the initial term or a successive term. The Landlord must notify the Tenant of any change and must offer the Tenant a new Agreement or an amendment to the existing Agreement. The Tenant must receive the notice at least 60 days before the proposed effective date of the change. The Tenant may accept the changed terms and conditions by signing the new Agreement or the amendment to the existing Agreement and returning it to the Landlord. The Tenant may reject the changed terms and conditions by giving the Landlord written notice that he/she intends to terminate the tenancy . . ."
 {¶ 49} Under the terms of the lease, Showe could not change the lease to eliminate the ten-day grace period and reject payments not made by the 1st of the month without prior approval of the Rural Housing Service. Showe could not change the terms without notifying Moore and obtaining her agreement to the terms, and any such change would not take effect until the beginning of the next lease term. There is *Page 16 
no evidence that Showe attempted to change the lease by using the procedure outlined in paragraph 24 to eliminate the ten-day grace period. While the lease states initially that rent is due the 1st of the month, the lease later provides for a ten-day grace period, attaches late fees only to checks presented on the 11th of the month, and reserves the right to reject checks presented on or after the 11th of the month. Written notice to Moore in the letters accompanying the rejected rent payments that rent was due on the 1st of the month does not comply with the terms of the lease regarding change in the terms of the lease, and Showe therefore wrongfully rejected the rent payments tendered by Moore during the ten-day grace period in June, July, August, September, and November.
 {¶ 50} As discussed above, a tenant is not required to tender rent where the landlord's conduct has rendered the tender meaningless, vain, or useless. Id. In the instant case, Showe's conduct in repeatedly rejecting rent payments tendered during the grace period made it clear that a tender of December rent at anytime after December 1st would have been a vain, useless, and meaningless act. When asked if a tender of December rent would have been accepted if timely, Jacqueline Henry, Showe's senior property manager, testified that she would have called the corporate office to speak to an attorney. Tr. 11. Further, Showe rejected an early tender of Moore's rent for January 2008. Showe's conduct demonstrates that they did not intend to accept any tender of rent after the first of the month from Moore after the dismissal of their FED action by the Licking County Municipal Court in July 2007. It appears from the purchase date on the money order, which Moore used to try to pay the December rent, that she would not have and/or could not have paid the December rent on or *Page 17 
before the first of December. And she knew that Showe was not going to allow her the grace period as set forth in the lease. Moore was therefore excused from tendering her December payment, and the court erred in issuing a writ of restitution based on her late payment of rent in December, 2007.
 {¶ 51} The first assignment of error is sustained.
 {¶ 52} Appellant's second and third assignments of error are rendered moot by our disposition of assignment of error one. The judgment of the Licking County Common Pleas Court is reversed.
Edwards, J. Wise, P.J. and Delaney, J. concur *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is reversed. Costs assessed to appellee. *Page 1