[Cite as *Fast Property Solutions, Inc. v. Jurczenko*, 2013-Ohio-60.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| FAST PROPERTY SOLUTIONS, INC., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2012-L-015 and 2012-L-016** |
| ALEXANDER JURCZENKO, et al., | : | |
| Defendants-Appellants, | : | |
| JAMES DOUGLASS, | : | |
| Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 09 CV 000363.

Judgment: Affirmed.

*Jaye M. Schlachet* and *Eric M. Levy*, 55 Public Square, Suite 1600, Cleveland, OH 44113 (For Plaintiff-Appellee).

*Alexander Jurczenko,* pro se, P.O. Box 1366, Mentor, OH 44061.

*Marjorie Jurczenko*, pro se, P.O. Box 1366, Mentor, OH 44061.

*Grace M. Doberdruk*, Doberdruk & Harshman Law Office, 4600 Prospect Avenue, Cleveland, OH 44103 (For Appellant).

MARY JANE TRAPP, J.

{¶1} Alexander and Marjorie Jurczenko and their counsel, Attorney James R. Douglass, appeal from a judgment of the Lake County Court of Common Pleas, which found them to have engaged in frivolous conduct in violation of Civ.R. 11 while defending a complaint in forcible entry and detainer filed by Fast Property Solutions, Inc.

against the Jurczenkos. Citing both the trial court's inherent authority and Civ. R. 11, the court imposed a sanction of $11,155 in attorney fees plus costs, after a hearing and an extensive review of years of voluminous pleadings, motions, and briefs filed in four different courts, which demonstrated a pattern of numerous, repeated violations of Civ.R. 11, evincing willful conduct. This conduct can only be described as interposed solely to delay, obfuscate, confuse, confound, and wear down their opponent and the court. We affirm the judgment of the trial court, and we cannot improve upon its summary.

{¶2} The Jurczenkos and their counsel "exhibited a pattern of making misrepresentations to the court, and engaging in dilatory and frivolous conduct, while simultaneously accusing the plaintiff and its several attorneys of various forms of misconduct. The defendants and their counsel repeatedly raised arguments that had already been raised and ruled upon. When unhappy with these rulings, the defendants and their counsel consistently chose courses of action designed to further delay these proceedings, and increase the costs of litigation, such as filing actions in other courts in an attempt to stay these proceedings, misrepresenting the procedural history of this case and/or the prior rulings of the court to confuse and delay proceedings, or raising the same issues that had already been litigated, rather than addressing the issues that were at hand."

{¶3} The appeals have been consolidated for disposition in this appeal.

**Substantive Facts and Procedural History**

{¶4} This is not the first time the parties are before this court regarding litigation centered upon a residential home owned by Fast Property Solutions. We have described a portion of the lengthy procedural history of this case in *State ex rel.*

2

*Jurczenko v. Lake County Court of Common Pleas*, 11th Dist. No. 2009-L-178, 2010-Ohio-3252. For the benefit of the readers of this opinion, we recount the following history:

### The Lease/Purchase Agreement

**{¶5}** In 2006, the Jurczenkos entered into an agreement to purchase a single-family home on Lakeview Drive in Mentor, Ohio. As part of the express terms of this agreement, the Jurczenkos were obligated to pay the prior owners the sum of $ 152,000 for the real estate. After living in their new residence for only forty-three days, the Jurczenkos entered into a separate transaction with Fast Property Solutions. Under the first step of this transaction, the Jurczenkos assigned the real estate purchase agreement to Fast Property Solutions. Under the second step, the couple and Fast Property Solutions executed a lease/purchase agreement, which allowed the couple to retain possession of the residence notwithstanding the assignment to the company.

**{¶6}** Pursuant to the terms of the "lease/purchase" agreement, the Jurczenkos were obligated to pay Fast Property Solutions a monthly rent payment of $900. These rent payments were to continue for a period of 12 months, from July 2006 through June 2007.

**{¶7}** The "lease/purchase" agreement further provided that, once the one-year lease period concluded, the Jurczenkos had the option of reacquiring the residence from Fast Property Solutions for the sum of $180,000. According to this provision of the agreement, the option to purchase had to be exercised by June 1, 2007.

### First Complaint in Forcible Entry and Detainer

**{¶8}** Despite the fact that the Jurczenkos failed to timely exercise their option to purchase at the close of the one-year lease period, they continued to live in the

3

residence over the ensuing months. Finally, in December 2007, Fast Property Solutions instituted a forcible entry and detainer action against the Jurczenkos in the Mentor Municipal Court.

### First Settlement Agreement

{¶9} Shortly after the eviction action was filed, it was voluntarily dismissed when the two sides were able to negotiate a separate contract to modify the original "lease/purchase" agreement. As part of this Lease Purchase Modification Agreement, the Jurczenkos agreed that the option to purchase the residence for the sum of $180,000 must be exercised by May 31, 2008. The agreement further provided for a consent judgment entry which the Jurczenkos agreed to sign so Fast Property Solutions could obtain an immediate final order if it became necessary to pursue a second case for its possession of the property.

### Second Complaint in Forcible Entry and Detainer

{¶10} At the end of July, after the Jurczenkos again failed to pay the required amount to exercise the option to purchase, Fast Property Solutions filed a second complaint for forcible entry and detainer in the Mentor Municipal Court. Attached to the new complaint was a copy of the consent judgment entry, which was referenced in the Modification Lease Purchase Agreement and signed by the Jurczenkos. The municipal court approved and signed the consent judgment entry, which was journalized on the same day.

### The Jurczenkos' Motion for Relief From Judgment

{¶11} Three days later, the Jurczenkos filed a motion for relief from judgment, alleging misconduct by Fast Property Solutions' counsel, and claiming that the consent entry was not enforceable because the Jurczenkos had sent a notice of rescission of

4

the consent entry to Fast Property Solutions two months before the filing of the second complaint. Attached to the motion for relief from judgment was Mr. Jurczenko's affidavit in which he averred that he had unilaterally rescinded the Modification Lease Purchase Agreement on May 31, 2008 (the date the payment was due), because he believed it to be a violation of R.C. 5321.13(B), which prohibits the use of a warrant of attorney to confess judgment for the recovery of rent or damages to a residential property. The affidavit also alleged Fast Property Solutions breached the settlement agreement by demanding that the defendants pay its attorney's fees.

{¶12} In addition, the Jurczenkos asserted that the municipal court did not have subject matter jurisdiction over the action. They argued that a forcible entry and detainer action was inappropriate because their relationship with Fast Property Solutions was not that of landlord-tenant. According to the Jurczenkos, even though the original contract had been labeled as a "lease/purchase" agreement, the nature of its terms established that it was actually a "creative financing" document, under which they had retained color of title to the subject residence and Fast Property Solutions had only obtained a mortgage interest in the property.

### Second Settlement Agreement

{¶13} A week later, the Mentor Municipal Court granted the motion for relief from judgment and scheduled the matter for a hearing. At that hearing, a second settlement agreement was reached. The second settlement agreement provided that the Jurczenkos would withdraw their motion for relief from judgment, that the court would vacate the consent judgment, and that the Jurczenkos would purchase the property for $185,000.

{¶14} The agreement also provided the Jurczenkos would fund the escrow with a down payment of $5,550 by August 22, 2008, and close the deal by September 30, 2008. The parties also agreed that if the Jurczenkos failed to make the down payment by August 22, 2008, they would vacate the premises by August 25, 2008, and consent to the issuance of a writ of restitution. However, if the Jurczenkos made the down payment, but failed to close by September 20, 2008, they would agree to the issuance of a writ and vacate by October 1, 2008, and the down payment of $5,550 would be returned to the Jurczenkos.

### Defendants' Notice of Compliance

{¶15} On September 8, 2008, the Jurczenkos filed, pro se, a notice of compliance, alleging they had complied with the (second) settlement agreement, but also claiming they were unable to purchase the home pursuant to the agreement because Fast Property failed to provide the necessary paperwork for them to obtain financing.

### Fast Property Solutions' Motion to Enforce

{¶16} Fast Property filed a motion to enforce the in-court settlement. At the motion hearing, the municipal court found Fast Property to be entitled to a writ of restitution. On that day, the municipal court issued the writ, but did not address the substance of the pending motion for relief from judgment.

### First Prohibition Action and the Motion to Stay

{¶17} Immediately after the hearing, the Jurczenkos initiated an original action for a writ of prohibition in this court (Appeal No. 2008-L-149), to enjoin the municipal court from continuing to exercise its jurisdiction over the forcible entry and detainer action, and on the following day the Jurczenkos also filed, pro se, a motion to stay in the

6

Mentor Municipal Court. They claimed the action had been treated as an eviction matter, when in fact they had "unequivocally" presented evidence that the transaction between the parties was a "creative financing" mechanism to allow them to purchase the property.

{¶18} This court issued an alternative writ, denying the ex parte emergency request for stay as to the writ of restitution, but granted a stay of any further proceedings in the trial court. The Jurczenkos entered into negotiations with counsel representing the municipal court to resolve the prohibition matter.

{¶19} The Jurczenkos also filed in the trial court a motion to restore possession of premises, and a joint motion of the Jurczenkos and the City of Mentor's law director was filed in this court to dissolve the temporary stay to allow the trial court to address the August 1, 2008 motion for relief from judgment, despite the fact that, as part of the second settlement agreement, they had agreed to withdraw their motion for relief from judgment.

{¶20} On October 10, 2008, this court granted the joint motion to dissolve the stay. The Jurczenkos then filed an emergency motion to stay pending a hearing on the motion for relief from the judgment.

### Writ of Restitution Vacated

{¶21} On October 17, 2008, the municipal court issued a judgment granting the motion for relief from judgment and restoring the Jurczenkos to the premises. The court also vacated all orders, agreements, and consent entries. In its judgment vacating the writ of restitution, the municipal court held that the Jurczenkos should have been given the opportunity to respond to Fast Property Solutions' second complaint before a final determination was made; accordingly, the issuance of the writ of restitution was

7

vacated, and the Jurczenkos were permitted to file an answer to the complaint. At the end of October, this court, upon a joint request, dismissed the prohibition matter in Case No. 2008-L-149.

### The Jurczenkos' (First) Motion to Dismiss

{¶22} On October 24, 2008, the Jurczenkos filed, pro se, a motion to dismiss and an answer in the Mentor Municipal Court. The motion to dismiss alleged the municipal court did not have subject matter jurisdiction, claiming the agreement between the parties was not a rental agreement but a "creative financing" arrangement. They also accused Fast Property Solutions of making misrepresentations to the court and engaging in egregious conduct.

{¶23} The municipal court set a hearing on the motion to dismiss for November 18, 2008. On November 14, 2008, the day the Jurczenkos' brief was due, Attorney Douglass filed a notice of appearance as counsel for both Mr. and Mrs. Jurczenko, and asked for a continuance. He then filed a hearing brief, alleging again that the written agreement was not a lease but a purchase agreement, and also accusing Fast Property Solutions of violating Civ.R. 11, usury, and engaging in a pattern of corrupt activity. The municipal court denied the motion to dismiss on November 25, 2008, and scheduled the forcible entry and detainer action for trial.

### Second Writ of Prohibition

{¶24} The Jurczenkos then instituted a second original action for a writ of prohibition before this court (Case No. 2008-L-170). After we granted a temporary stay of the municipal court proceedings, the Jurczenkos negotiated a new settlement with counsel representing the municipal court. This settlement provided the stay order would be momentarily lifted so that the Jurczenkos could submit an amended answer, which

would set forth certain counterclaims against Fast Property Solutions, and, upon the filing of the amended answer, the municipal court would then reconsider whether it still should go forward on the merits of the forcible entry and detainer claim.

{¶25} In January 2009, we dissolved the temporary stay, and eventually granted the parties' joint motion to dismiss in June 2009.

### Mrs. Jurczenko's Counterclaim

{¶26} On January 9, 2009, Attorney Douglass, on behalf of the Jurczenkos and without leave of court, filed an answer and Mrs. Jurczenko's counterclaim. The counterclaim alleged that Mrs. Jurczenko was the equitable owner of the subject property, and that Fast Property Solutions was a non-bank mortgage lender in the business of providing "creative financing." Also, the counterclaim alleged that Fast Property Solutions skirted Ohio's law and persuaded the Jurczenkos to enter into the lease/purchase agreement with it; the claim was made even though the Jurczenkos themselves drafted the "lease/purchase" agreement. The counterclaim also alleged the agreement was a "creative financing" agreement, which resulted in a constructive mortgage. That allegation was made even though the agreement specifically stated that the agreement "shall not under any circumstances or interpretation be construed as a mortgage or other financing mechanism under any equitable or legal principle."

{¶27} The multiple-count counterclaim further accused Fast Property Solutions of engaging in deceptive acts. It also alleged violations of Home Ownership and Equity Protection Act, the Truth in Lending Act, and the Consumer Sales Practices Act, as well as unconscionable and frivolous conduct, usury, and abuse of process by Fast Property Solutions. The counterclaim also sought to quiet title.

### Transfer to the Court of Common Pleas

9

{¶28} Because the Jurczenkos sought a money judgment in the sum of $500,000, exceeding the limits of the municipal court's monetary jurisdiction, the municipal court ordered the case transferred to the Lake County Court of Common Pleas. On February 5, 2009, the case was transferred from the Mentor Municipal Court to the Lake County Court of Common Pleas. The matter was assigned to Judge Lucci of the common pleas court for final disposition. While the parties were engaging in preliminary discovery, the Jurczenkos renewed their motion to dismiss Fast Property Solutions' single claim on jurisdictional grounds.

{¶29} As they had before the municipal court, the Jurczenkos contended that Fast Property Solutions could not maintain a proper claim in forcible entry and detainer because the original agreement of the parties had established a mortgagor/mortgagee, not landlord/tenant, relationship. In light of this, they further contended that, because the municipal court never had subject matter jurisdiction over the claim, the common pleas court and Judge Lucci could not have acquired jurisdiction over the claim through the transfer.

### Second Motion to Dismiss

{¶30} On May 15, 2009, the Jurczenkos, through Attorney Douglass, filed the second motion to dismiss, alleging again that the municipal court lacked subject matter jurisdiction, claiming this is not a forcible entry and detainer action because they had color of title, and therefore, the municipal court had no power to transfer the case to the common pleas court. To support the contention that their jurisdictional claim was meritorious, they cited the fact that this court twice stayed the proceedings in the prohibition actions; the claim was made despite the fact that this court stayed the

10

proceedings only to maintain the status quo and to allow time to address the issues raised in the prohibition proceedings.

**{¶31}** On August 13 2009, the trial court issued a judgment overruling the Jurczenkos' motion to dismiss. The next day, Mrs. Jurczenko filed a notice of voluntarily dismissal of her counterclaims.

### Fast Property Solutions' Motion to Enforce Settlement Agreement

**{¶32}** On October 1, 2009, Fast Property Solutions moved for the enforcement of the (second) settlement agreement that the parties had negotiated during the prior proceedings before the municipal court. In the pre-trial brief, the defendants once again attempted to re-litigate the motion to dismiss, and claimed the (second) settlement agreement to have already been vacated by the court.

### Injunction Sought in Federal Court

**{¶33}** The trial court scheduled an oral hearing on the motion to enforce the settlement agreement for November 19, 2009. To prevent the proceedings from going forward, the Jurczenkos sought an injunction in the U.S. District Court, Northern District of Ohio (Case No. 09-cv-01127). The federal court denied the request for an injunction and the hearing in common pleas court went forward.

**{¶34}** At that hearing, the trial court and the attorneys for both sides discussed whether the Jurczenkos' amended answer contained a request for a jury trial. When both attorneys indicated that they could not affirmatively state that a written jury demand had been made, the trial court concluded that the matter would proceed as a bench trial on December 18, 2009.

**{¶35}** Two days before trial, the defendants, through Attorney Douglass, filed a pretrial statement, raising again the argument that the court lacked jurisdiction.

## Trial on Forcible Entry and Detainer Action

**{¶36}** On December 18, 2009, the trial finally began on the forcible entry and detainer claim and the motion to enforce the settlement agreement. Immediately prior to the commencement of trial, Mr. Jurczenko filed a notice of appearance, indicating Attorney Douglass was no longer the attorney of record and that he would be representing himself. Attorney Douglass represented Mrs. Jurczenko alone.

**{¶37}** Also, before the trial was to begin, the defendants made an oral motion for a jury trial, claiming that their answer and counterclaim filed on January 12, 2009, did contain an express request for a jury trial. The trial court overruled the motion, after determining that a waiver of the right to a jury trial had occurred during the discussion with the attorneys at the November 18, 2009 hearing.

## Another Prohibition Action

**{¶38}** After the completion of the proceeding's first day, Mrs. Jurczenko filed another petition for a writ of prohibition before this court against Judge Lucci and the Lake County Court of Common Pleas, seeking a writ to enjoin any further proceedings in the case (Case No. 2009-L-178). She raised two basic challenges to the trial court's jurisdiction over the matter. First, she again asserted that the court could not go forward on the forcible entry and detainer claim because the municipal court could not transfer a matter which never fell within the scope of its subject matter jurisdiction. Second, she alleged that the trial court lost its jurisdiction over the entire matter when Judge Lucci erroneously denied the Jurczenkos their right to a jury trial on the remaining issues.

**{¶39}** This court overruled the first motion to stay all further proceedings. The trial went forward on December 22, 2009, December 23, 2009, and January 15, 2010.

12

**{¶40}** This court eventually granted the motion for summary judgment denying the writ. *State ex rel. Jurczenko v. Lake County Court of Common Pleas*, 11th Dist. No. 2009-L-178, 2010-Ohio-3252.[1] This court concluded that: (1) the municipal court did not exceed the scope of its jurisdiction in a plain and unambiguous manner; and (2) relator had an adequate remedy at law.

### The Trial Court's Judgment Granting the Writ of Restitution

**{¶41}** After the four-day trial, the trial court issued a lengthy, 22-page judgment on Fast Property Solutions' sole claim and motion to enforce, granting a writ of restitution. The trial court determined that the municipal court and the common pleas court had jurisdiction over this matter, and also addressed in detail the various issues raised by the defendants, including the validity of two prior settlement agreements and the proper interpretation of the parties' "lease/purchase" agreement.

### Direct Appeal

**{¶42}** On March 16, 2010, Mrs. Jurczenko alone appealed the judgment in Appeal No. 2010-L-024. Fast Property Solutions subsequently moved this court to dismiss the appeal, because Mrs. Jurczenko had vacated the premises which were the subject of the underlying forcible entry and detainer action. Mrs. Jurczenko did not file a response to the motion to dismiss.

**{¶43}** On December 3, 2010, we dismissed the appeal, on the ground that the sole purpose of a forcible entry and detainer action is to determine a party's right to have immediate possession of the disputed property. *Showe Management Corp. v. Moore*, 5th Dist. No. 08 CA 10, 2009-Ohio-2312, ¶36. "Accordingly, once the tenant has vacated the premises and the landlord has again taken possession, the merits of

---

1. The foregoing procedural history is taken, in part, from *State ex rel. Jurczenko v. Lake County Court of Common Pleas,* ¶2-18.

13

such action are rendered moot because no further type of relief can be granted in favor of the landlord." *Fast Prop. Solutions, Inc. v. Jurczenko*, 11th Dist. No. 2010-L-024, 2010-Ohio-5933, ¶3, citing *Showe Management, supra*.

**Motion for Sanctions**

{¶44} Before the appeal was concluded, Fast Property Solutions filed a motion for sanctions under R.C. 2323.51 and Civ.R. 11, alleging frivolous conduct by the Jurczenkos and Attorney Douglass. The trial court determined Fast Property's claims under R.C. 2323.51 were untimely, but allowed the Civ.R. 11 claims to proceed.

{¶45} The court held a hearing on Fast Property's Civ.R. 11 claims. Fast Property Solutions presented evidence that it had incurred attorney's fees in the amount of $11,155.00 as a result of the defendants' and their counsel's frivolous conduct.

{¶46} At the hearing, Mr. Jurczenko argued again the motion was untimely, and alleged Mrs. Jurczenko was not served with notice of the hearing. He also claimed the plaintiff could not establish frivolous conduct unless it first filed a Civ.R. 12(B)(6) motion to dismiss or motion for summary judgment. He argued additionally that he was not subject to sanctions because he was not a party to the counterclaim or the original actions for writs of prohibition, and because he only signed the filings in the Mentor Municipal Court, which had granted his motion for relief from judgment.

{¶47} The trial court, in a lengthy, 24-page decision, granted the motion for sanctions pursuant to Civ.R. 11 against Alexander and Marjorie Jurczenko and Attorney Douglass. The court found the defendants and their counsel, throughout the entire course of the action, engaged in egregious, frivolous conduct in violation of Civ.R. 11, by making a "continual and collaborative effort to delay the proceedings and increase

14

the costs of the litigation." The court held them jointly and severally liable for the amount of $11,155.00 plus costs.

**{¶48}** Attorney Douglass, represented by counsel, and the Jurczenkos, pro se, filed separate appeals in No. 2012-L-015 and 2012-L-016, respectively.

### Appeal No. 2012-T-015: Attorney Douglass' Appeal

**{¶49}** In Appeal No. 2012-L-0015, Attorney Douglass brings the following two assignments of error for our review:

**{¶50}** "[1.] It was an abuse of discretion for the trial court to sanction appellant when the evidence presented at the hearing failed to show a willful violation of Civil Rule 11."

**{¶51}** "[2.] The trial court abused its discretion by sanctioning appellant when appellee's motion for sanctions was not filed within a reasonable time period."

### Civ. R. 11 Sanctions and Our Standard of Review

**{¶52}** In this case, although the motion for sanctions sought imposition of sanctions pursuant to both R.C. 2323.51 and Civ.R. 11, the court imposed the sanctions only under Civ.R. 11. That rule requires attorneys, or pro se litigants, to sign every motion, pleading, or other document filed in a civil action. This signature serves as a certificate that the attorney (or pro se litigant) filing the document: (1) has read the document; (2) that everything contained in it is true to the best of the individual's knowledge; (3) that there is a good ground to support it; and (4) that its purpose was not to delay. Civ.R. 11. An R.C. 2323.51 frivolous conduct motion is determined under an objective standard; however, the courts have applied a subjective bad faith standard in determining whether there is a violation of Civ.R. 11. *See State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, ¶8; *State Farm*

15

*Ins. Cos. v. Peda*, 11th Dist. No. 2004-L-082, 2005-Ohio-3405; *Riston v. Butler*, 149 Ohio App.3d 390, 2002-Ohio-2308, ¶12,36 (1st Dist.).

**{¶53}** The subjective bad-faith standard is met when a violation of Civ.R. 11 is found to be willful. *State ex rel. Dreamer v. Mason*, 115 Ohio St.3d 190, 2007-Ohio-4789. In other words, when a party is found to have filed a document without good grounds to support it or for the purpose to delay, the court must determine whether the violation was willful. *Rondini v. Seman*, 11th Dist. No. 2002-L-017, 2002-Ohio-6590, ¶6, citing *Stone v. House of Day Funeral Serv., Inc.*, 140 Ohio App.3d 713, 721 (6th Dist.2000). If the court concludes that the violation was willful, the court may then impose sanctions pursuant to Civ.R. 11. *Id.*

**{¶54}** In *Law Office of Natalie F. Grubb v. Bolan*, 11th Dist. No. 2010-G-2965, 2011-Ohio-4302, this court elaborated on the notion of willfulness:

**{¶55}** "Civ.R. 11 measures sanctionable conduct using a subjective bad faith standard which requires all violations to be willful. Bad faith 'is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud. * * * It means 'with actual intent to mislead or deceive another.' Thus, '* * * a court can impose sanctions only when the attorney or pro se litigant acts willfully and in bad faith by filing a pleading that he or she believes lacks good grounds or is filed merely for the purpose of delay." (Citations omitted.) *Id.* at ¶32. *See also Slater v. Motorists Mutual Insurance Co.*, 174 Ohio St. 148 (1962), paragraph two of the syllabus.

**{¶56}** The purpose of Civ.R. 11 is "to curb the abuse of the judicial system which results from baseless filings that burden the courts and individuals with needless

16

expense and delay." *Bardwell* at ¶12, citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). "[T]he specter of Rule 11 sanctions encourages a civil litigant to 'stop, think and investigate more carefully before serving and filing papers.'" *Id.*, quoting *Cooter*.

{¶57} As to our standard of review of an award under Civ.R. 11, such an award will be upheld on appeal unless there is an abuse of discretion by the trial court. *State ex rel. Fant v. Sykes*, 29 Ohio St.3d 65 (1987). We recognize, however, that the standard of review with respect to purely legal issues, such as whether good legal grounds exist to support a complaint, is de novo. *Stevenson v. Bernard*, 11th Dist. No. 2006-L-096, 2007-Ohio-3192, ¶38.

{¶58} As this court recently stated, the term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. As the Second District explained, when an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.

**The Trial Court's Decision Finding Willful Violation of Civ.R. 11**

{¶59} In his first assignment of error, Attorney Douglass claims the trial court abused its discretion because the evidence failed to show a willful violation of Civ.R. 11.

{¶60} In its judgment, the trial court found Attorney Douglass and the Jurczenkos acted in concert and in bad faith in filing multiple motions for the purposes of delaying the litigation, maliciously injuring the plaintiff, and increasing the costs of litigation. The lengthy decision enumerated many instances of such conduct and more than adequately provided the trial court's rationale for finding the conduct in willful violation of Civ.R. 11. Notably, on appeal, Attorney Douglass does not refute any specific findings by the trial court, but simply claims in a conclusory manner that there was no evidence that he acted with willful intent to violate Civ.R. 11.

**We Find No Abuse of Discretion in the Court's Imposition of Sanctions**

{¶61} Having reviewed the protracted procedural history of this case and the lengthy decision of the trial court, which thoroughly articulated its rationale for sanctions, we do not find an abuse of discretion of the trial court in sanctioning the Jurczenkos and their counsel, who repeatedly and persistently engaged in conduct that unnecessarily delayed the proceedings and increased the costs of litigation. We admire zealous advocacy, but Attorney Douglass and the Jurczenkos crossed the line separating zeal from patent frivolousness. As the trial court observed, the Jurczenkos last paid rent in August 2007, but the trial on Fast Property Solutions' forcible entry and detainer complaint could not begin until December 18, 2009, due to the defendants' and counsel's delaying tactics in filing numerous pleadings and motions in the municipal court, the common pleas court, the court of appeals, as well as the federal court.

18

**{¶62}** By engaging in the prolonged litigation, in which the Jurczenkos and their counsel repeatedly raised issues already ruled upon, making arguments not supported by the existing law, and making misrepresentations to the court – in an apparent effort to delay or avoid a trial on the merits of the eviction action – the Jurczenkos were able to reside rent-free for two years in a house owned by the plaintiff, without ever presenting any credible evidence they had the means to purchase the home.

**{¶63}** In the following chart, we summarize the filings and conduct found to be sanctionable by the trial court. The five columns in the chart represent (1) the date, (2) the sanctioned filing/conduct, (2) the individual(s) who signed or committed the conduct, (4) claims made by defendants, and (5) the trial court's reasons for sanctions.

| Date | Filing/Conduct | Signed by | Claims | Reasons for Sanction |
|---|---|---|---|---|
| 8/1/2008 | Motion for Relief from Judgment and Affidavit | Filed and signed by Alexander and Marjorie Jurczenko, pro se; affidavit by Alexander Jurczenko | • alleged misconduct by opposing counsel<br>• claimed consent entry not enforceable due to rescission.<br>• claimed the municipal court did not have subject matter jurisdiction<br>• claimed the lease/purchase agreement was a "creative financing" document<br>• affidavit alleged unilateral rescission of the modified lease and purchase agreement<br>• alleged Plaintiff breached the first settlement agreement | • There was no good ground to support the motion; allegation that the consent entry violated R.C. 5321.13(B) was not supportable by existing law; motion filed in bad faith, for purpose of delay and to increase costs of litigation;<br>• Argument that Plaintiff breached the settlement agreement exhibited bad faith |
| 9/8/2008 | Notice of Compliance | Filed and signed by Alexander and Marjorie Jurczenko, pro se | • alleged they complied with the second settlement agreement | • the notice was filed in bad faith because the Jurczenkos presented nothing in writing confirming they |

19

| Date | Document | Filed/Signed By | Claims | Findings |
|---|---|---|---|---|
| | | | •claimed they were unable to complete the purchase because of Plaintiff's failure to provide necessary paperwork | qualified for a loan •attempted to evade the purchase agreement by raising spurious arguments |
| 10/1/2008 | Motion to Stay Filed in Writ of Prohibition (2008-L-149) | Filed and signed by Alexander and Marjorie Jurczenko, pro se | claimed the matter involved a "creative financing mechanism," not subject to an eviction action | •the Jurczenkos twice settled the eviction action, and, after receiving the benefits, twice attempted to invalidate the settlement agreement •No good ground to support the motion to stay; asserted factual contentions without evidentiary support; misrepresented procedural history and pertinent issues |
| 1/9/2009 | Counterclaim | Filed by Marjorie Jurczenko; signed by Attorney Douglass | •alleged Marjorie was the "equitable" owner of the subject property •claiming Plaintiff violated Home Ownership and Equity Protection Act, Truth in Lending Act, Consumer Sales Practices Act, and committed unconscionable and frivolous acts, usury, and abuse of process •Counterclaim withdrawn later by Attorney Douglass | •bad faith claim that Plaintiff persuaded defendants to enter into the lease/purchase agreement when in fact defendants drafted the agreement •bad faith claim that the lease/purchase agreement was a financing agreement even though the agreement specifically stated the agreement was not to be construed as a mortgage or financing mechanism. •Homeownership and Equity Protection Act, Truth in Lending Act, and quiet title claims were clearly inappropriate, and no evidence was presented to support remaining claims •factual and legal contentions were not supported by good grounds •counterclaim filed in bad faith, interposed only to |

| | | | | |
|---|---|---|---|---|
| | | | | delay the litigation, and to increase costs of litigation |
| 5/15/2009 | Second Motion to Dismiss | Filed and signed by Attorney Douglass on behalf of the Jurczenkos | Raised again the subject matter jurisdiction issue claiming the defendants had color of title and the action was not an eviction matter | Motion was filed in bad faith; the claim that defendants had color of title precluding the municipal court's jurisdiction was groundless |
| 10/15/2009 | Brief opposing Motion to Enforce Settlement Agreement | Filed and signed by Attorney Douglass on behalf of the Jurczenkos | •Attempted to reopen the motion to dismiss; claimed again the court did not have jurisdiction; •accused opposing counsel of misrepresentation and violation of federal law; •claimed plaintiff, who was the title owner, was not the owner; •claimed the trial court had "vacated" the second settlement agreement, contrary to the record | The defendants' conduct in continually renewing arguments already addressed and alleging facts that had no evidentiary basis was in bad faith, and served only to harass plaintiff, delay the proceedings, and increase the cost of litigation |
| 12/16/2009 | Pretrial statement | Filed and signed by Attorney Douglass on behalf of the Jurczenkos | Reiterated arguments that the case was not an eviction action; that Marjorie had color of title; and that the court lacked jurisdiction | The repetitive arguments regarding jurisdiction was frivolous and in violation of Civ.R.11 |
| 12/18/2009 | Jury Demand made on 1st day of bench trial | Attorney Douglass represented Marjorie Jurczenko only; Alexander Jurczenko represented himself | Attorney Douglass and Mr. Jurczenko claimed there had been a demand for jury trial | •One month before the trial, the court had inquired as to whether there was a demand for jury trial and decided the case would proceed as a bench trial when the parties could not affirmatively state there was a jury |

| | | | | demand. Attorney Douglass and Mr. Jurczenko did not object during the month-long interval •The trial court found the jury trial demand made on the morning of trial was to delay and to increase litigation cost |
|---|---|---|---|---|
| 12/22/2009; 12/23/2009; 01/15/2010 | Trial | Attorney Douglass represented Marjorie Jurczenko; Alexander Jurczenko represented himself | raised again the argument that the lease/purchase agreement was a "creative financing" agreement/ equitable mortgage/land contract | The trial court found defendants' arguments contradicted by the agreement itself (drafted by defendants), which provided that the agreement "shall not under any circumstances or interpretation be construed as a mortgage or other financing mechanism under any equitable or legal principle." The court found the Jurczenkos' insistence upon arguing a position contradicted by the express provision of the agreement they themselves drafted to warrant sanctions. |

{¶64} Notably, the Jurczenkos did not pursue their direct appeal, which this court dismissed after the Jurczenkos voluntarily vacated the premises, rendering the appeal moot. It is quite telling that, after the protracted litigation over the issue of the lower court's lack of subject matter jurisdiction, the defendants chose not to pursue the direct appeal and present the issue for our review.

{¶65} A trial court is in the best position to assess what is permissible zealous advocacy and what crosses the line, and is appropriately given an inherent authority, as well as authority conferred by Civ.R. 11, to impose sanctions based on a party's

22

litigation conduct. Viewing the conduct of the Jurczenkos and their counsel in totality, we cannot say that their actions were merely negligent or resulted from a good faith misinterpretation of the state of existing law. The conduct, indeed, imported a dishonest purpose, implied conscious doing of wrong, and was for the purpose of delay, thus rising to the level of willfulness warranting sanctions under Civ.R. 11. *Grubb*, *supra*. The abuse of the judicial system by the defendants and their counsel – in repeatedly filing documents, raising baseless claims, and burdening the courts and the opposing party with needless expense and delay – is exactly what Civ.R. 11 is designed to deter. *Bardwell, supra*. The trial court, in addition, possesses "the inherent power to do those things necessary for the preservation of their judicial powers and processes * * *." *Slabinski v. Servisteel Holding Co.*, 33 Ohio App.3d 345 (9th Dist.1986), syllabus. "Sanctions may be imposed against parties or their attorneys when the judicial process is abused." *Ceol v. Zion Industries, Inc.*, 81 Ohio App. 3d 286, 289 (9th Dist.1992). The first assignment of error is without merit.

### Whether the Motion for Sanction was Filed Untimely

{¶66} Under the second assignment of error, Attorney Douglass contends the trial court abused its discretion in sanctioning him because the motion for sanction was not filed within a reasonable time.

{¶67} R.C. 2323.51 requires a motion for an award of sanctions to be filed not more than 30 days after the entry of final judgment. R.C. 2323.51(B). In contrast, Civ.R. 11 does not have a time limitation. *Mitchell v. Whitaker*, 33 Ohio App.3d 170 (8th Dist.1988).

{¶68} Here, Fast Property Solutions filed the motion for sanctions on August 2, 2010, slightly over five months after the final judgment was entered in this case on

23

February 16, 2010.  The trial court considered the Jurczenkos' claim that the motion was untimely, but ruled it was filed within a reasonable time.

{¶69}  On appeal, Attorney Douglass cites to a single case authority for his claim, *Zunshine v. Cott*, 10th Dist. No. 07AP-764, 2008-Ohio-2298, ¶17.  In this case involving the recovery of attorney's fees, the attorney waited nearly a year – until after the fee matter was terminated, appealed, and then remanded – to file the motion for sanctions against his client.  The court of appeals found the motion to be untimely, because "[n]o facts that give rise to [the motion for sanctions] accrued after [the final pretrial on the fee matter]."

{¶70}  *Zunshine* is not binding authority, and, furthermore, is readily distinguishable.  Here, the Jurczenkos filed a notice of appeal on March, 16, 2010 (Case No. 2010-L-024) from the final judgment, which we eventually dismissed on December 3, 2010, because they vacated the premises, rendering the appeal moot.  In light of the history of this case, Fast Property Solutions cannot be faulted for waiting for the conclusion of the direct appeal before filing its motion for sanctions.  Therefore, we do not find an abuse of discretion by the trial court in ruling that the motion for sanctions was filed timely.   The second assignment of error is without merit.

### Appeal No. 2012-L-016: the Jurczenkos' Appeal

{¶71}  The Jurczenkos assign two errors for our review:

{¶72}  "[1.] The Mentor Municipal Court and the Lake County Court of Common Pleas lacked subject matter jurisdiction, which can never be waived and is not barred by res judicata, and can be raised at any time, even on appeal, rendering the proceedings below void ab initio."

24

**{¶73}** "[2.] The Common Pleas Court committed clear error by considering and granting appelles [sic] untimely motion for sanctions which was devoid of any factual and legal merit."

**{¶74}** We have already addressed the Jurczenkos' second assignment of error in Appeal No. 2012-L-015. We now turn to their first assignment of error.

### The Municipal Court Had Subject Matter over This Action

**{¶75}** Despite the belated presentation of the jurisdictional issue for our review, we will address the issue of the municipal court's subject matter jurisdiction in this appeal. If the municipal court had no jurisdiction over this forcible entry and detainer action, it would not have the authority to transfer the matter to the common pleas court, which in turn would lack authority to issue any rulings on this case, including the judgment of sanctions.

**{¶76}** Pursuant to Civ.R. 12(H)(3), an action over which a court lacks subject matter jurisdiction must be dismissed. "The standard of review for a dismissal for lack of subject matter jurisdiction is whether any cause of action cognizable by the forum has been raised in the complaint." *Reynoldsburg City Sch. Dist. Bd. of Edn. v. Licking Heights Local Sch. Dist. Bd. of Edn.*, 10 Dist. No. 08AP-415, 2008-Ohio-5969, ¶15.

**{¶77}** A municipal court has jurisdiction to hear any action in forcible entry and detainer. R.C. 1901.18(A)(8); *Estate of Allen v. Allen*, 11th Dist. No. 91-T-4580, 1992 Ohio App. LEXIS 3060, *3 (June 12, 1992). Here, Fast Property Solutions filed a complaint for forcible entry and detainer, alleging that it is the landlord of the property occupied by the Jurczenkos and that they had breached their lease agreement by failing to pay rent.

25

{¶78} The Jurczenkos claimed, however, that they occupied the premises under color of title and were the equitable owners of the property. They claimed the relationship between them and Fast Property Solutions was not that of landlord and tenant, and, therefore, the municipal court had no jurisdiction, despite the allegations on the face of the complaint. The Jurczenkos' claim is meritless.

{¶79} The Supreme Court of Ohio has held that "[a] Municipal Court, under section 1901.18, Revised Code, has jurisdiction to hear and determine a forcible entry and detainer action, where, although title to the realty is drawn in question, there is no question as to present record title." *Haas v. Gerski*, 175 Ohio St. 327 (1963), paragraph one of the syllabus. This court has also stated that if there is no question as to the present record title holder, then the municipal court is not precluded from deciding the forcible entry and detainer issue. *Allen* at *3, citing *Haas* and *State, ex rel. Carpenter v. Court*, 61 Ohio St.2d 208, 209 (1980). Thus, the Mentor Municipal Court had subject matter jurisdiction over this action; so did the Lake County Court of Common Pleas upon transfer from that court.

{¶80} The Jurczenkos' first assignment of error is without merit.

{¶81} The judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

26