[Cite as *Clark v. Corwin*, 2015-Ohio-4469.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
| --- | --- |
| LISA MARIE CLARK | C.A. No.    27524 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RUSSELL W. CORWIN, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No.    CV 2012-03-1723 |

DECISION AND JOURNAL ENTRY

Dated: October 28, 2015

HENSAL, Presiding Judge.

{¶1}    Lisa Clark appeals a judgment of the Summit County Court of Common Pleas that granted summary judgment to Russell Corwin on her tortious interference claims.  She also appeals an order granting Mr. Corwin's motion for sanctions.  For the following reasons, this Court affirms the award of sanctions but reverses the award of summary judgment.

I.

{¶2}    Dr. Robert Wickes is the president and majority shareholder of Altercare, Inc.  In July 2007, Dr. Wickes hired Ms. Clark to serve as the chief executive officer of Altercare's Northridge Health Care Center.  The following month, Ms. Clark entered into a contract with Mr. Corwin to provide accounting services for Altercare.

{¶3}    On March 11, 2008, the State of Ohio began an inspection of Northridge.  According to Dr. Wickes, after the inspection began he received a telephone call from Mr. Corwin, who told him that it was not going well and that Ms. Clark was being difficult with the

inspection team. Mr. Corwin recommended that Dr. Wickes hire Kurt Haas to monitor the situation because Mr. Haas was the former head of the inspection team. Dr. Wickes agreed, but he was in Florida, so he had Ms. Clark get in contact with Mr. Haas. Mr. Haas entered into a consulting contract with Altercare on March 21.

{¶4} According to Dr. Wickes, on March 26, Mr. Haas reported to him that the inspection was going badly. He said that Ms. Clark had been confrontational with the inspection team, had put her hands on an inspector, and was generally making things more complicated than necessary. Dr. Wickes called Mr. Corwin, who validated Mr. Haas's account and warned that Northridge was in danger of losing its government funding. Mr. Corwin also advised Dr. Wickes that he needed to keep Ms. Clark out of the facility. Dr. Wickes called Ms. Clark, who told him that the inspection was going fine. She denied touching any of the inspectors and told him that he could verify her account with Northridge's administrator. According to Dr. Wickes, when he tried to call the administrator, her line was busy. When he finally got through, the administrator told him that she had been speaking with Ms. Clark, who had pleaded with her to corroborate her story. After he spoke to the administrator, he called Ms. Clark again and told her not to go into work the next day. Ms. Clark insisted on going in, but Dr. Wickes told her that if she did, he would fire her. When Ms. Clark repeated again that she would be going in, Dr. Wickes fired her.

{¶5} Ms. Clark sued Mr. Haas and Mr. Corwin for tortious interference with contractual relations and tortious interference with a business relationship. While the case was proceeding, Mr. Haas died. When Ms. Clark failed to timely substitute Mr. Haas's estate, the trial court dismissed the claims against him. As the case continued, the parties had a number of discovery disputes. Notably, the court imposed sanctions upon Ms. Clark relating to the scope of a subpoena that she sent to Mr. Corwin's cell phone provider.

**{¶6}** In August 2013, Mr. Corwin moved for summary judgment. In August 2014, the trial court granted his motion, concluding that Mr. Corwin's statements to Dr. Wickes about how Altercare should proceed during the inspection were privileged communications and that Ms. Clark could not prove by clear and convincing evidence that he had acted maliciously when he gave his advice. Ms. Clark has appealed, assigning three errors. We have combined two of the assignments of error for ease of consideration.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE CORWIN ON PLAINTIFF-APPELLANT CLARK'S TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE CORWIN ON PLAINTIFF-APPLLANT CLARK'S TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS CLAIM.

**{¶7}** Ms. Clark argues that the trial court incorrectly granted Mr. Corwin's motion for summary judgment. Under Civil Rule 56(C), summary judgment is appropriate if:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting

Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶8} Ms. Clark argues that the trial court incorrectly resolved questions of fact in its decision. "In ruling on a motion for summary judgment, a trial court may not weigh the evidence and determine issues of fact." *Horner v. Elyria*, 9th Dist. Lorain No. 13CA010420, 2015-Ohio-47, ¶ 10. It also may not determine the credibility of the evidence. *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

{¶9} One of the disputes between the parties was whether Mr. Corwin was merely Altercare's accountant or whether he was also a business advisor. The trial court noted that Ms. Clark submitted a letter addressed to Altercare's shareholders that referred to Mr. Corwin's company as "our new accounting firm." The letter did not refer to Mr. Corwin as a general consultant or advisor. The court wrote, however, that "the record supports the conclusion that Corwin was both an accountant and business consultant for Wickes and Altercare." It, therefore, concluded that "Corwin's advice to Wickes that he * * * keep Clark away from the State inspector[]s * * * was a privileged communication." The court also wrote that "the record supports the conclusion that [Mr. Corwin's] statements and advice was made in good faith." The court further found that Dr. Wickes called Mr. Corwin on March 26, 2008, to ask him his professional opinion about how Altercare should proceed during the inspection. Ms. Clark argues that, even though she was not a party to the call, a jury could find that Dr. Wickes's testimony is not credible. *See Bradley v. Cage*, 9th Dist. Summit No. 20713, 2002 WL 274638, *2 (Feb. 27, 2002) ("The mere fact that testimony is uncontroverted does not necessarily require a jury to accept the evidence if the jury found that the testimony is not credible.").

{¶10} Upon review of the record, it does not appear that the trial court construed the evidence in a light most favorable to Ms. Clark, resolving issues of credibility in her favor and giving her the benefit of all permissible inferences. *Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. Summit No. 20655, 2002 WL 185305, *3 (Feb. 6, 2002). In addition, it appears that its improper findings led to its determination that Mr. Corwin was entitled to summary judgment. Accordingly, we reverse the award of summary judgment and remand this matter to the trial court so that it may apply the proper summary judgment standard in the first instance. *Horner* at ¶ 13. Ms. Clark's first and second assignments of error are sustained.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING AN ARBITRARY AND CAPRICIOUS ATTORNEY FEE SANCTION.

{¶11} Ms. Clark also argues that the trial court abused its discretion when it granted Mr. Corwin's motion for sanctions under Civil Rule 11. Rule 11 "requires an attorney to sign all pleadings and further provides that the signature constitutes a warrant that there is good ground for the action." *Heron Point Condominium Unit Owner's Assn. v. E.R. Miller, Ltd.*, 9th Dist. Summit Nos. 25861, 25863, 25998, 2012-Ohio-2171, ¶ 33. If a party willfully violates the rule, the court may issue sanctions. Civ.R. 11. Before a court imposes sanctions under Rule 11, "it must consider whether the attorney who signed the document (1) read it; (2) harbored good grounds to support it to the best of his or her knowledge, information, and belief; and (3) did not file it for the purpose of delay." *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 235 (9th Dist. 1995). "We review sanctions imposed pursuant to Civ.R. 11 under an abuse-of-discretion standard." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, ¶ 9.

{¶12} Following a discovery dispute between the parties, the court issued an order in October 2013, requiring Mr. Corwin to provide Ms. Clark with his billing records, financial records, and emails from June 2007 through June 2008. In December 2013, it issued an order acknowledging that the parties had also had a dispute about Mr. Corwin's phone records for those months. According to the court, Ms. Clark had agreed to prepare written authorizations for Mr. Corwin's cell phone record, which Mr. Corwin agreed to sign if he did not have any objections to them. The court noted that Mr. Corwin objected to the authorizations that Ms. Clark prepared because they were not limited to the court imposed time frame. In a March 2014 order, the court explained that Mr. Corwin had since signed authorizations and that Ms. Clark had sent them out to the phone companies. It also noted that the companies had not sent any documents back, so it instructed Ms. Clark to prepare a proposed order which would require the companies to produce the requested documents.

{¶13} In July 2014, Mr. Corwin filed a motion to quash a subpoena and motion for sanctions. In his motion, he noted that Ms. Clark did not submit the proposed order that the trial court had requested. Instead, she submitted a subpoena to his cell phone company requesting his records from June 2007 through December 2013. Mr. Corwin argued that the subpoena should be quashed not only because it sought his records beyond June 2008, but also because it was sent after the cutoff for discovery. Mr. Corwin also argued that Ms. Clark should be sanctioned for issuing the subpoena because she refused to withdraw it after he pointed out that it was not confined to the June 2007 through June 2008 time frame that the court had approved. Following a hearing, the trial court found that Ms. Clark's "act of issuing the * * * subpoenas after the discovery deadlines, and beyond the Court imposed time frame to be willful," and it awarded Mr. Corwin the expenses he had incurred in responding to her improper acts.

**{¶14}** Ms. Clark argues that she did not know that the court's time frame applied to discovery requests that she made to non-parties. In its December 2013 order, however, the court identified June 1, 2007, to June 30, 2008, as the dates for which Ms. Clark could obtain Mr. Corwin's cell phone records, referring to those dates as the "Court imposed time frame." In addition, in its March 2014 order, the trial court again explained that, although Ms. Clark had sought Mr. Corwin's cellphone records "from 2007 to present," it had "required the production of said documents for the dates of June 1, 2007, to June 30, 2008." In light of the series of court orders specifically limiting Ms. Clark's access to Mr. Corwin's cellphone records to a certain time frame, and Ms. Clark's failure to withdraw her subpoena even after Mr. Corwin pointed out to her that it was too broad, we conclude that the trial court did not abuse its discretion when it found that she willfully violated Civil Rule 11. We also conclude that the trial court exercised appropriate discretion when it limited its award of sanctions to the expenses Mr. Corwin incurred in contesting the improper subpoena. Ms. Clark's third assignment of error is overruled.

III.

**{¶15}** The trial court exercised appropriate discretion when it granted Mr. Corwin's motion for sanctions, but it incorrectly applied the test for summary judgment. The judgment of the Summit County Court of Common Pleas is affirmed in part, and reversed in part, and this matter is remanded for reconsideration of Mr. Corwin's motion for summary judgment.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
JENNIFER HENSAL
FOR THE COURT


SCHAFER, J.
CONCURS.

MOORE, J.
CONCURRING IN JUDGMENT ONLY.

{¶16} I concur in the majority's judgment. I write separately to point out that the trial court's judgment entry is replete with examples of the trial court construing evidence and resolving issues of credibility in favor of the moving party and, sometimes, entirely omitting[1] or

---

[1] For example, the trial court failed to mention that Ms. Clark testified in her deposition that Altercare intended to end its business relationship with Mr. Corwin due to issues with his performance, or that, according to Ms. Clark, she informed Mr. Corwin on more than one occasion about the issues with his performance.

mischaracterizing[2] evidence that could support the position of the nonmoving party; the majority opinion only provides a handful of examples.

{¶17} Accordingly, upon remand, the trial court must remain mindful of the summary judgment standard and its duty to refrain from resolving factual disputes and to view the evidence in a light most favorable to the nonmoving party. Addressing only those instances mentioned by the majority or in this separate opinion may not remedy the issue.

APPEARANCES:

CARYN M. GROEDEL and LORI M. GRIFFIN, Attorneys at Law, for Appellant.

FRANK H. SCIALDONE, NEIL S. SARKAR, and TERRY L. WILLIAMS, Attorneys at Law, for Appellee.

GEORGE EMERSHAW, Attorney at Law, for Appellee.

---

[2] In concluding that Dr. Wickes' deposition testimony did not contain evidence of false and malicious statements made by Mr. Corwin and Mr. Haas on March 26, 2008, the trial court appears to have misstated the evidence. The trial court stated that, "[t]he cited testimony [from Dr. Wickes' deposition referenced in Ms. Clark's brief in opposition] had nothing to do with the March 26, 2008 conversation between [Mr.] Corwin and [Dr.] Wickes wherein [Mr.] Corwin, at [Dr.] Wickes['] request, gave his business advice and opinion that Altercare keep [Ms.] Clark away from the State inspectors until the survey was finished." However, in examining the pages of the deposition referenced, in a light most favorable to Ms. Clark, there is evidence that contradicts the trial court's conclusion.