**[Cite as *Oehler v. McAdams*, 2019-Ohio-1976.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SCOTT N. OEHLER

    Appellee

    v.

PAT MCADAMS, et al.

    Appellees

    and

DANIEL S. WHITE

    Appellant

C.A. No.     28903

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-03-1490

DECISION AND JOURNAL ENTRY

Dated: May 22, 2019

SCHAFER, Presiding Judge.

{¶1} Appellant, Attorney Daniel S. White, appeals the judgment of the Summit County Court of Common Pleas granting sanctions against him. For the reasons that follow, we affirm.

I.

{¶2} Defendants-Appellees, Pat and Rebecca McAdams ("the McAdamses"), and Plaintiff-Appellee, Scott Oehler, entered into a real estate purchase agreement. The record shows that the McAdamses purchased the property at issue as an investment and that, during the approximately eight months they owned the property, never lived there. The McAdamses made various repairs and improvements to the property before selling it to Mr. Oehler in March 2015, including the replacement of a downspout pipe with a perforated pipe and the addition of gravel

and grading around the property. Mr. McAdams also painted the basement with an oil based primer, which was not designed to resist moisture or seal the block.

{¶3} The parties entered into a real estate purchase agreement that provided that Mr. Oehler would purchase the property in its "as is" condition contingent upon his good faith satisfaction with the results of a home inspection. The McAdamses indicated on the residential disclosure form which they provided to Mr. Oehler that they were not aware of any previous or current water leakage, water accumulation, excess moisture, or other defects to the property and denied any knowledge of any previous or current flooding, drainage, settling or grading or erosion problems on the property. The McAdamses did, however, disclose on the form that there had previously been a brick veneer on the front of the home that allowed water to run behind and enter the foundation. Mr. Oehler hired a home inspector to perform a general home inspection which indicated no detection of moisture in the basement of the property or any relevant issues.

{¶4} After a few months of owning the property with no issue, Mr. Oehler experienced a flooding event in the basement following an unusually heavy rainfall for several days. Mr. Oehler subsequently contacted several basement waterproofing companies in an effort to remediate the issues caused by the water intrusion. Ohio State Waterproofing provided Mr. Oehler with an estimate to install a water-proofing system in the basement which was the highest of all the estimates Mr. Oehler received and almost twice as much as the lowest estimate. Although no subsequent flooding event occurred at the property, Mr. Oehler hired Ohio State Waterproofing to install a water-proofing system more than six months later.

{¶5} Mr. Oehler thereafter filed the complaint in this matter, through Attorney White, alleging fraudulent disclosure, fraudulent inducement, and mutual mistake of fact. The complaint sought damages related to the installation of a water-proofing system in the basement

of the property. The McAdamses answered the complaint and the matter proceeded through the pretrial process. The McAdamses issued discovery requests and deposed both Mr. Oehler and an Ohio State Waterproofing foreman. Attorney White did not issue any discovery on behalf of his client prior to the discovery deadline nor did he depose the McAdamses or their expert.

{¶6} The McAdamses eventually filed a motion for summary judgment on all of Mr. Oehler's claims. Mr. Oehler responded to the motion through Attorney White and the McAdamses thereafter filed a response in support of their motion. The trial court ultimately granted the McAdamses' motion, entering judgment in their favor and against Mr. Oehler on all claims in the complaint. In doing so, the trial court determined that Mr. Oehler could point to no evidence that any water infiltration had occurred prior to the sale other than that which the McAdamses disclosed on the property disclosure form. The trial court further found that Mr. Oehler had failed to establish that any defects related to water or mold existing prior to the sale of the property or the June flooding event. Finally, the trial court found that Mr. Oehler had failed to present any evidence that the McAdamses were aware of any prior instances of water intrusion or damage, let alone that the McAdamses had concealed such defects and/or intentionally misled Mr. Oehler about any such defects.

{¶7} The McAdamses thereafter filed a motion for sanctions, pursuant to R.C. 2323.51 and Civ.R. 11, asserting that they were entitled to an award of reasonable attorney fees and costs incurred for opposing the frivolous filing and prosecution of the lawsuit, specifically stating the following:

> Attorney White and Mr. Oehler filed and prosecuted this suit knowing that their allegations were without evidentiary support and not warranted under existing law. McAdamses's [sic] counsel believes that the suit was filed as part of an assembly line process developed by Attorney White and his expert witness, Ohio State Waterproofing * * *, without regard to the merits of this case.

Mr. Oehler, through Attorney White, argued in his response that sanctions were not appropriate in this matter. At the sanctions hearing, the McAdamses elicited testimony from both Attorney White and Mr. Oehler. Attorney White did not present any testimony.

{¶8} The trial court ultimately determined that Attorney White had engaged in frivolous conduct when he initiated and maintained the litigation in this case and granted the McAdamses' motion for sanctions, determining that an award of attorney fees was appropriate. The trial court then set the matter for a hearing to determine the amount of the award. Thereafter, Attorney White filed a motion for leave to withdraw as counsel for Mr. Oehler, citing Mr. Oehler's request that Attorney White no longer represent him in this matter. Although the trial court granted Attorney White's motion, the court stated in its order both Attorney White and Mr. Oehler were still required to attend the later hearing.

{¶9} The trial court subsequently ordered that the matter be assigned to a magistrate for resolution and disposition. Following the hearing on sanctions, the magistrate issued a decision finding that damages should be awarded against Attorney White only for his actions and not against Mr. Oehler. The magistrate further found that the McAdamses were entitled to an award of $37,185.89 consisting of attorney fees and expenses incurred as a result of litigating the present matter as a result of Attorney White's frivolous conduct. The trial court thereafter adopted the magistrate's decision and rendered judgment in favor of the McAdamses and against Attorney White in the amount of $37,185.89.

{¶10} Attorney White filed this timely appeal, raising three assignments of error for our review. As assignments of error two and three raise similar issues, we elect to address them together.

II.

**Assignment of Error I**

**The trial court's decision to grant [the McAdamses]' motion for sanctions against [Attorney White] constitutes reversible error.**

{¶11} In his first assignment of error, Attorney White contends that the trial court erred in granting sanctions against him. Specifically, Attorney White argues that his conduct was not frivolous because (1) he has successfully represented a number of home buyers who had been damaged by a seller's failure to appropriately disclose problems with the purchased property; (2) a good faith argument was made concerning the issues in this case; (3) there was no evidence of malice or willfulness and his conduct in this case was not meant to harass or maliciously injure; (4) evidence was presented to support the allegations in the complaint; (5) the grant of summary judgment in favor of the sellers and against the buyers is not sufficient to show frivolous conduct; and (6) the trial court's grant of summary judgment in this case was improper and ignored significant repairs made to the home by the sellers.

{¶12} Although the McAdamses sought sanctions against Attorney White pursuant to Civ.R. 11 and R.C. 2323.51, the trial court's decision and award were made pursuant to R.C. 2323.51 only. Pursuant to R.C. 2323.51(B), a court may award court costs, reasonable attorney fees, and other reasonable expenses to any party adversely affected by frivolous conduct incurred in connection with a civil action. "'Conduct' means * * * [t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action[.]" R.C. 2323.51(A)(1)(a). "Frivolous conduct" is defined as follows:

(a) Conduct of [a] * * * party to a civil action * * * that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a). "'R.C. 2323.51 does not purport to punish a party for failing on a claim. Rather, it addresses conduct that serves to harass or maliciously injure the opposing party in a civil action or is unwarranted under existing law and for which no good-faith argument for extension, modification, or reversal of existing law may be maintained'" *Harold Pollock Co., LPA v. Bishop*, 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 19, quoting *Indep. Taxicab Assn. of Columbus v. Abate*, 10th Dist. No. 08AP-44, 2008-Ohio-4070, ¶ 22. "Frivolous conduct, as contemplated by R.C. 2323.51(A)(2)(a), is judged under an objective, rather than a subjective standard, * * * and must involve egregious conduct." *State ex rel. DiFranco v. City of S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, ¶ 15, citing *State ex rel. Strikler v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 21.

{¶13} The analysis  of a claim pursuant to R.C. 2323.51(A)(2) "boils down to a determination of (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable fees necessitated by the frivolous conduct is

to be awarded to the aggrieved party." *P.N. Gilcrest Ltd. Partnership v. Doylestown Family Practice, Inc.*, 9th Dist. Wayne No. 10CA0035, 2011-Ohio-2990 at ¶ 32. This Court's standard of review is subject to which part of the analysis is at issue on appeal. *Flint v. Flint*, 9th Dist. Lorain No. 15CA010895, 2016-Ohio-5279, ¶ 7. "A trial court's award of attorney fees under R.C. 2323.51 is generally reviewed under an abuse of discretion standard, but the trial court's factual finding that frivolous conduct occurred will be affirmed if supported by competent credible evidence in the record." *Eastwood v. Eastwood*, 9th Dist. Summit No. 25310, 2010-Ohio-6492, ¶ 12, citing *S & S Computer Systems, Inc. v. Peng*, 9th Dist. Summit No. 20889, 2002-Ohio-2905, ¶ 9.

{¶14} Although the trial court did not specify the subsection of R.C. 2323.51(A)(2)(a) upon which it based its finding of frivolous conduct, its findings appear to implicate only subsections (i), (iii), and (iv). The trial court determined that Attorney White engaged in frivolous conduct pursuant to R.C. 2323.51(A)(2) when he initiated and maintained the litigation at issue below after making the following factual findings. First, the trial court found that the defects and substantial repairs referenced in Mr. Oehler's response to the motion for sanctions were not required disclosures and were unrelated to the allegations in the complaint, the flooding, or the damage cause by water infiltration. Second, the court found that Attorney White did not sufficiently address the manner in which he receives referrals from Ohio State Waterproofing in order to dispel the evidence of collaboration. Third, the court found that Attorney White had not substantiated his claim that he has obtained favorable verdicts in wet basement cases with facts and evidentiary support similar to the present action. Finally, the court found that Attorney White did not satisfactorily explain his failure to complete deposition discovery in this matter.

{¶15} In their motion for sanctions, the McAdamses alleged that Attorney White and Ohio State Waterproofing filed and prosecuted this suit knowing that their allegations were without evidentiary support and not warranted under existing law and that was their counsel's belief "that the suit was filed as part of an assembly line process developed by Attorney White and his expert witness, Ohio State Waterproofing * * * , without regard to the merits of the case." The complaint in this matter alleges that the McAdamses made fraudulent representations concerning the property fraudulent inducement, fraud, and mutual mistake of fact. The elements of fraud are:

> (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) resulting injury proximately cause by the reliance.

*Ponder v. Culp*, 9th Dist. Summit No. 28184, 2017-Ohio-168, ¶ 11. Despite alleging that the McAdamses had made fraudulent representations to Mr. Oehler and carrying the burden to prove such allegations, Attorney White made no effort to issue timely discovery requests or to depose the McAdamses or their identified expert. During the discovery process, the McAdamses issued a discovery request asking what evidence Mr. Oehler had to support his claims. Mr. Oehler responded that he was relying on the fact that the McAdamses had painted the basement and an expert report generated by an Ohio State Waterproofing foreman that stated, in his opinion, the water intrusion issues did not happen overnight. Mr. Oehler specifically stated during his deposition that his belief that Mr. McAdams had prior knowledge of water intrusion was based on the flooding event he had experienced and that Mr. McAdams had painted the basement walls.

**{¶16}** A review of the hearing transcript shows that when the McAdamses' counsel specifically asked Attorney White what facts were known to him prior to filing the complaint other than what was written in the foreman's report and that the basement had been painted, he was evasive until directly addressed by the court. When the court expressly asked him what knowledge or circumstantial evidence he had at the time he filed the complaint regarding a problem with water intrusion on the property, Attorney White stated that he "probably would have had whatever the contractors found out there based on what their report was and information as to what they did. And that was later more amplified by what the defendants put in their own pleadings." In addition to his vague and ambiguous description of the facts known to him when he filed the complaint, Attorney White also could not state with certainty whether or not he knew specific facts or indicate when in the course of litigation he may have known them.

**{¶17}** "An allegation or factual contention needs only minimal evidentiary support in order for a party or its attorney to avoid a frivolous conduct finding under R.C. 2323.51(A)(2)(a)(iii)." *Southard Supply, Inc. v. Anthem Contractors, Inc.*, 10th Dist. Franklin No. 16AP-545, 2015-Ohio-7298, ¶ 14, citing *Carasalina LLC v. Bennett*, 10th Dist. Franklin No. 14AP-74, 2014-Ohio-5665, ¶ 36. "If a party makes an allegation or factual contention on information or belief, then the party must have the opportunity to investigate the truth of that allegation or factual contention. However, if a party persists in relying on that allegation or factual contention when no evidence supports it, then the party has engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(iii)." *Carasalina* at ¶ 36.

**{¶18}** In support of the contention that this matter was filed and maintained as part of an "assembly line" of litigation without consideration of the merits of this particular case, the

McAdamses identified a significant number of cases—all decided prior to the commencement of this case—wherein Attorney White was counsel of record for the plaintiff and an appellate court concluded that the evidence, similar to the evidence relied on in filing the complaint in this matter, was not sufficient to support claims for fraud or mutual mistake. *See e.g. Muruschak v. Schafer*, 11th Dist. Lake No. 2015-L-071, 2015-Ohio-5340, ¶ 21-22 (holding that contention that wall was freshly painted was insufficient where plaintiff did not attest that a defect was discovered hidden under the coat of pain in order to prove concealment and that a "waterproofer" attestating that in his opinion the water infiltration problems "probably" took a number of years was not evidence that the sellers knew or should have known of the issue); *Brown v. Scheussler*, 9th Dist. Summit No. 25008, 2010-Ohio-642, ¶ 9 (holding that there was no evidence that the seller's representation of no water intrusion was fraudulent although a waterproofing company foreman opined that the problems he fixed "did not develop overnight and probably took a number of years to get the point at which he found them" because (1) the waterproofer did not offer an opinion as to how long the water had been present or whether the seller would have known it was there; and (2) although the buyer experienced water intrusion several months after purchasing the home, it did not follow that the problem existed before the sale or that the sellers knew about the problem); *Lewis v. Marita*, 8th Dist. Cuyahoga No. 99697, 2013-Ohio-5431, ¶ 25 (noting that the evidence showed sellers did not occupy the home and stating that the fact that the sellers painted or primed the basement walls does not necessarily establish that they knew of a water intrusion problem and attempted to conceal that fact); *McDonald v. JP Dev. Group, L.L.C.*, 8th Dist. Cuyahoga No. 99322, 2013-Ohio-3914, ¶ 17; *Wallington v. Hageman*, 8th Dist. Cuyahoga No. 94763, 2010-Ohio-6181, ¶ 19 (stating buyer could not show that seller knew or should have known of a water intrusion problem where a seller never lived in the home and

buyer did not present any other facts to support their belief that seller had knowledge of water intrusion problem).

{¶19} In the response to the motion for sanctions and in his arguments made at the hearing, Attorney White attempted to show that he and Mr. Oehler had a reasonable and good faith basis for asserting and maintaining the claims against the McAdamses by claiming that some appellate courts have affirmed grants of summary judgment in favor of plaintiffs in matters with similar facts. However, all of the cases cited by Attorney White in the response and at the hearing are factually and/or procedurally distinguishable from this case. *See DiNapoli v. Lewandowski*, 9th Dist. Summit No. 18897, 1998 WL 668004 (Sept. 30, 1998) (procedurally and factually distinguishable); *Meadows v. Otto*, 5th Dist. Stark No. 2006CA00138, 2007-Ohio-4031 (factually distinguishable); *Nichols v. Petroff*, 5th Dist. Stark No. 2004CA00271, 2005-Ohio-481 (factually distinguishable).

{¶20} Regardless, in light of the significant number of "wet basement" cases wherein Attorney White served as counsel of record and his own argument at the sanctions hearing that he did "a lot of research in these cases," Attorney White should have been on notice that the evidence he relied on in filing the complaint in this matter, which consisted of the language used in the foreman's report and the fact that the McAdamses had painted the basement, standing alone, would not be sufficient evidence to prove fraud. Furthermore, a review of the record shows that Attorney White and Mr. Oehler, prior to filing the complaint, knew of other facts which would arguably be detrimental to the case. For instance: (1) neither the inspection report nor the appraisal noted any indication of water damage or intrusion, (2) the McAdamses never lived on the property; and (3) Mr. Oehler had only experienced a singular flooding event in the property's basement after an abnormally heavy rainfall, but had otherwise not experienced

further water intrusion. Additionally, during his deposition, the foreman contradicted his report, stating that he had not observed the property before installing the water-proofing system and that he did not "know exactly what was going on before[.]" Nonetheless, despite all of this adverse information, Attorney White admitted during the hearing that he *did not conduct any discovery* on behalf of his client. Accordingly, we conclude that the trial court's finding that Attorney White failed to satisfactorily explain his failure to complete discovery in this matter was supported by competent credible evidence.

{¶21} A review of the record also shows that the trial court's finding that the defects and substantial repairs referenced in the response to the motion for sanctions were not required disclosures and were unrelated to the allegations in the complaint, the flooding, or the damage caused by water infiltration is also supported by competent credible evidence. Attorney White attempted in the response and at the hearing to argue that he and Mr. Oehler had a reasonable and good faith basis for asserting the claims against the McAdamses because the McAdamses had failed to disclose certain defects and made substantial repairs to the property. However, the only additional evidence Attorney White points to were statements made in the McAdamses' motion for summary judgment and attached affidavits. Specifically, he refers to the McAdamses' statements that they had replaced an exterior downspout pipe with a perforated pipe, added gravel and grading around the property, and cleaned and painted the basement for hygienic reasons since the prior owners kept animals. None of these statements implicate a fraudulent misrepresentation regarding the McAdamses' knowledge of prior water intrusion on the property, nor do they contradict the McAdamses' representation that they had no such knowledge of prior water intrusion. Additionally, none of the defects and or repairs referenced by the McAdamses in are required disclosures on the residential property disclosure form since

the form only requires a seller to disclose repairs completed in response to any known water intrusion problem. *See* R.C. 5302.30 and Ohio Adm.Code 1301:5-6-10.

{¶22} A review of the record further shows that the trial court's finding that Attorney White did not sufficiently address the manner in which he receives referrals from Ohio State Waterproofing to dispel the evidence of collaboration is supported by competent credible evidence. The McAdamses' motion for sanctions stated that their counsel believed this suit was brought as part of an assembly line process developed by Attorney White and Ohio State Waterproofing without regard to the merits of the case. Although Attorney White denied paying Ohio State Waterproofing to render expert opinions, the Ohio State Waterproofing foreman stated during his deposition that he was being paid his daily rate by Ohio State Waterproofing to provide testimony at the deposition and that Ohio State Waterproofing was being compensated for his time. The foreman also stated that he had "worked with" Attorney White at least four times before and that other foremen had also worked with Attorney White. The record shows that the foreman rendered the "expert opinion," on which Attorney White relied, at the time of service. However, in their motion for sanctions and during the hearing, the McAdamses' were able to point to a number of cases filed by Attorney White that specifically referenced identical or analogous language used by other Ohio State Waterproofing foremen in their opinions regarding basement water intrusion in other cases. Although Attorney White was initially evasive regarding referrals from Ohio State Waterproofing, he eventually stated during the hearing that he did receive referrals from various basement waterproofing companies, but had "no idea" how many referrals he received from Ohio State Waterproofing in a given year. He also stated he did not know who referred Mr. Oehler to him or how many cases he filed each year using an Ohio State Waterproofing foreman to render an expert opinion.

{¶23} Finally, a review of the record further shows that although Attorney White claimed he had received favorable verdicts in cases with similar facts and evidentiary support, he failed to point the court to any of those favorable verdicts. In the response to the motion for sanctions Attorney White listed a number of common pleas court cases where he "has been successful," but did not explain in what way he was successful, what facts and evidentiary support existed in those cases, nor did he submit any evidence as to the actual judgments entered any of the cases. Attorney White did point to a settlement agreement for one of the common pleas court cases as evidence of "success," but a review of that agreement shows that it does not list any allegations, facts, or evidence presented in the matter and specifically states that the releasers "acknowledge and agree that the settlement of [the] matter constitutes resolution of a doubtful and disputed claim and the payment of the [s]ettlement [a]mount is not to be construed as an admission of liability * * * ." Additionally, the appellate cases Attorney White cites as examples of favorable verdicts wherein he was counsel of record are factually and/or procedurally distinguishable from this case. *See DiNapoli* (factually distinguishable); *Meadows* (factually distinguishable); *Nichols* (factually distinguishable).

{¶24} Based on the foregoing, we conclude that under the specific circumstances of this case, the trial court's factual findings, taken as a whole, support the trial court's determination that Attorney White engaged in frivolous conduct by initiating and maintaining this action. Attorney White's first assignment of error is overruled.

## Assignment of Error II

**The trial court's decision to assign sole liability to [Attorney White] constitutes reversible error.**

**Assignment of Error III**

**The trial court's decision to adopt the magistrate's finding constitutes reversible error.**

**{¶25}** In his second assignment of error, Attorney White contends that the trial court erred when it assigned him sole liability for the sanctions. In his third assignment of error, Attorney White contests the trial court's adoption of the magistrate's findings as to the amount of attorney fees to award to the McAdamses as a result of the trial court's grant of the McAdamses' motion for sanctions. However, we do not reach the merits of Attorney White's assignments of error as they were forfeited below.

**{¶26}** In this case, the trial court bifurcated the proceedings, agreeing to hold a hearing on damages only if the court determined that sanctions were appropriate. After issuing the order granting the McAdamses' motion for sanctions, the trial court ordered the matter be assigned to a magistrate for resolution and disposition of the remaining issues. Following the hearing, the magistrate determined that damages should be awarded against Attorney White only since the focus of the order was the actions of Attorney White as counsel for Mr. Oehler and the order did not specifically reference any of Mr. Oehler's actions as the plaintiff. The magistrate further found that the McAdamses were entitled to an award of $37,185.89 consisting of attorney fees and expenses incurred as a result of litigating the present matter as a result of Attorney White's frivolous conduct. Attorney White did not file any objections to the magistrate's decision and the trial court thereafter adopted the decision and rendered judgment in favor of the McAdamses and against Attorney White in the amount of $37,185.89.

**{¶27}** "This Court has held that when a party fails to properly object to a magistrate's decision in accordance with Civ.R. 53(D)(3), the party has forfeited the right to assign those issues as error on appeal." *Adams v. Adams*, 9th Dist. Wayne No. 13CA0022, 2014-Ohio-1327,

¶ 6. "While a [party] who forfeits such an argument still may argue plain error on appeal, this [C]ourt will not sua sponte undertake a plain-error analysis if the [party] fails to do so." (Alterations sic.) *Bass-Fineberg Leasing, Inc. v. Modern Auto Sales, Inc.*, 9th Dist. Medina No. 13CA0098-M, 2015-Ohio-46, ¶ 24. Accordingly, Attorney White has failed to preserve for appellate review the issues set forth in assignments of error two and three and we decline to address them. *See Henry v. Henry*, 9th Dist. Summit No. 27696, 2015-Ohio-4350, ¶ 18.

{¶28} We note, however, that on appeal, Attorney White contends he was never served with the magistrate's decision. Nonetheless, Attorney White did not raise the issue in the trial court and we decline to do so in the first instance because such a ruling would exceed our jurisdiction as a reviewing court. *See Catalanotto v. Byrd*, 9th Dist. Summit No. 27824, 2016-Ohio-2815, ¶ 12.

{¶29} Attorney White's second and third assignments of error are overruled.

III.

{¶30} Attorney White's assignments of error are overruled. Therefore, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


JULIE A. SCHAFER
FOR THE COURT


CALLAHAN, J.
CONCURS.

HENSAL, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

DANIEL S. WHITE, Attorney at Law, pro se, Appellant.

ANN L. WEHENER, Attorney at Law, for Appellee.

SCOTT N. OEHLER, pro se, Appellee.