[Cite as *In re Guardianship of Bakhtiar*, 2024-Ohio-1208.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: GUARDIANSHIP OF
FOUROUGH BAKHTIAR

C.A. No.     23CA011985

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     2013 GI 00040

DECISION AND JOURNAL ENTRY

Dated: March 29, 2024

SUTTON, Judge.

**{¶1}** Appellants, Charles Longo and Gregory Gipson appeal from the judgment of the Lorain County Court of Common Pleas, Probate Division.  For the reasons that follow, this Court affirms.

I.

**Relevant Background**

**{¶2}** This appeal arises from the May 26, 2021 motion for sanctions filed by Zachary Simonoff, Guardian of the Person and Estate of Fourough Bakhtiar.  Mr. Simonoff filed the motion against Attorney Charles Longo, Attorney Gregory Gipson, and Khashayar Saghafi, Ms. Bakhtiar's son, for  Civ.R. 11 sanctions and frivolous conduct pursuant to R.C. 2323.51.  The trial court held an evidentiary hearing on November 16, 2021.  Attorney Longo appeared at the hearing, along with Mr. Simonoff, and Mr. Simonoff's expert witness, Attorney Giovanna Bremke.  Attorney Gipson and Khashayar Saghafi did not appear at the hearing.

**{¶3}** In a judgment entry, journalized on April 12, 2023, the trial court stated:

Attorneys Longo and Gipson have repeatedly violated Civ.R. 11 by their conduct in this [c]ourt. It is also clear that they, along with their client Khashayar [Saghafi], have engaged in frivolous conduct in violation of R.C. 2323.51. In addition, they have continually raised frivolous and baseless defenses before this [c]ourt that are prohibited by R.C. 2323.51(a)(2)(iii).

\* \* \*

As and for an appropriate sanction for the violations of R.C. 2323.51 and [Civ.R. 11] and the frivolous and willful conduct as set forth above, the [c]ourt imposes the sum of $77,975.75 as the total amount of the sanction in this case, which amount represents the cost to [Mr.] Simonoff, as Guardian of the Estate, for the frivolous and repetitive activities committed by Khashayar [Saghafi], [Attorney] Longo and [Attorney] Gipson over at least the last 3-1/2 years. This amount is the aggregate total of (i) the $17,355 in fees due to the Guardian for his services, (ii) the $55,620.75 in fees and expenses due to the Guardian's counsel for his services, and (iii) the $5,000.00 charged by [Attorney] Bremke for her expert witness services and court appearance in this matter.

**{¶4}** Attorneys Longo and Gipson now appeal, raising three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE PROBATE COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED [MR. SIMONOFF'S] MOTION FOR SANCTIONS WITHOUT VALID SUBJECT MATTER JURISDICTION OVER THE GUARDIANSHIP PROCEEDINGS.**

**{¶5}** In their first assignment of error, Attorneys Longo and Gipson argue the trial court lacked subject matter jurisdiction over the guardianship of Ms. Bakhtiar due to an alleged issue regarding personal service. For the following reasons, we disagree.

**{¶6}** The Supreme Court of Ohio, in *Ostanek v. Ostanek*, 166 Ohio St.3d 1, 2021-Ohio-2319, ¶ 20-21, explained the nuances of jurisdiction as follows:

\* \* \*

We have recognized that the word "jurisdiction," set apart by itself, "is a vague term, '"a word of many, too many, meanings."'" *Cheap Escape Co., Inc. v. Haddox,*

*L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 5, quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 90 (1998), quoting *United States v. Vanness*, 85 F.3d 661, 663 (D.C.Cir.1996), fn. 2. It encompasses "[s]everal distinct concepts, including territorial jurisdiction, monetary jurisdiction, personal jurisdiction, and subject-matter jurisdiction," *id.*, as well as "jurisdiction over a particular case," *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 18. "The often unspecified use of this polysemic word can lead to confusion and has repeatedly required clarification as to which type of 'jurisdiction' is applicable in various legal analyses." *Id*.

\* \* \*

"Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case," *Corder v. Ohio Edison Company*, 162 Ohio St.3d 639, 2020-Ohio-5220, ¶ 14, and a court's subject-matter jurisdiction "'is determined without regard to the rights of the individual parties involved in a particular case,'" *id.*, quoting *Kuchta* at ¶ 19. "Instead, 'the focus is on whether the forum itself is competent to hear the controversy.' " *Id*. at ¶ 14, quoting *Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, at ¶ 23; *see also* 18A Wright, Miller & Cooper, Federal Practice and Procedure, Section 4428, at 6 (3d Ed.2017) ("Jurisdictional analysis should be confined to the rules that actually allocate judicial authority among different courts").

\* \* \*

**{¶7}** Further, in *State ex rel. Reynolds v. Kirby*, 172 Ohio St.3d 273, 2023-Ohio-782, ¶ 19, the Supreme Court of Ohio stated:

Probate courts, like juvenile courts, are courts of limited jurisdiction that can exercise only the authority granted to them by statute and the Ohio Constitution. The primary statute conferring jurisdiction on probate courts, R.C. 2101.24, grants them *exclusive jurisdiction* over numerous matters relating to probate estates, *guardianships*, trusts, and postdeath disputes.

(Emphasis added.) (Internal citations omitted.) Additionally, R.C. 2101.24 states probate courts have exclusive jurisdiction, "[t]o appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts." Thus, based upon the foregoing, the Lorain County Court of Common Pleas, Probate Division, has subject matter jurisdiction to preside over this guardianship.

{¶8} Attorneys Longo and Gipson, however, conflate subject matter jurisdiction with personal jurisdiction. R.C. 2111.04(A)(2)(a)(i) and (ii) state:

Except for an interim or emergency guardian appointed under division (B)(2) or (3) of section 2111.02 of the Revised Code, no guardian of the person, the estate, or both shall be appointed until at least seven days after the probate court has caused written notice, setting forth the time and place of the hearing, to be served as follows:

In the appointment of the guardian of an incompetent, notice shall be served as follows:

Upon the person for whom appointment is sought by personal service, by a probate court investigator, or in the manner provided in division (A)(2)(a)(ii) of this section. The notice shall be in boldface type and shall inform the alleged incompetent, in boldface type, of the alleged incompetent's rights to be present at the hearing, to contest any application for the appointment of a guardian for the alleged incompetent's person, estate, or both, and to be represented by an attorney and of all of the rights set forth in division (C)(7) of section 2111.02 of the Revised Code.

If the person for whom appointment is sought is a resident of, or has a legal settlement in, the county in which the court has jurisdiction, but is absent from that county, the probate court may designate, by order, a temporary probate court investigator, in lieu of a regular probate court investigator appointed or designated under section 2101.11 of the Revised Code, to make the personal service of the notice described in division (A)(2)(a)(i) of this section upon the person for whom appointment is sought.

{¶9} In *In re Guardianship of Roth*, 7th Dist. Mahoning No. 04 MA 199, 2005-Ohio-5057, ¶ 31, the Seventh District Court of Appeals aptly explained:

it has been repeatedly held that the notice requirements pursuant to [R.C. 2111.04(A)(2)] are satisfied when an alleged incompetent is put on notice that the court's jurisdiction has been invoked concerning whether or not a guardian should be appointed.

{¶10} Here, Ms. Bakhtiar was clearly put on notice that the court's jurisdiction had been invoked concerning whether she should be appointed a guardian. The record reveals Mehdi Saghafi, Ms. Bakhtiar's now deceased ex-husband and Dariush Saghafi, Ms. Bakhtiar's son, filed applications on May 3, 2013, to appoint a guardian over Ms. Bakhtiar's person and estate. On

May 29, 2013, a court investigator personally served Ms. Bakhtiar with notice of the guardianship proceedings. At that time, the court investigator spoke with Ms. Bakhtiar who indicated she opposed Medhi Saghafi and Dariush Saghafi as guardians, but agreed to Jaleh Presutto, her daughter, being appointed guardian.

{¶11} On May 31, 2013, Jaleh Presutto filed an application to appoint herself as guardian over her mother's person and estate. Attorney Stephen Wolf appeared on behalf of Ms. Bakhtiar on October 16, 2013, and filed an application nominating Ms. Presutto as guardian and a motion to reconsider an additional medical examination requested by Medhi Saghafi and Dariush Saghafi because the medical doctor in question, Barry Layton, M.D., was a friend and associate of Medhi Saghafi. On November 25, 2013, Jaleh Presutto and Steven Sartschev were named as interim guardians of Ms. Bakhtiar's person and estate respectively. Ms. Bakhtiar was personally served with notice of this hearing and appeared at the hearing with counsel. At that time, the trial court spoke with Ms. Bakhtiar, *in camera*, regarding the ongoing proceedings. Subsequently, Mr. Sartschev resigned and the court appointed Zachary Simonoff as guardian of Ms. Bakhtiar's estate. The record also indicates notice of an evidentiary hearing set on October 23, 2014, regarding all outstanding applications for the appointment of a guardian of Ms. Bakhtiar's person, was sent to Ms. Bakhtiar's counsel, Mr. Wolf. Mr. Wolf attended that hearing on Ms. Bakhtiar's behalf. At the October 23, 2014 evidentiary hearing, the trial court appointed Ms. Presutto and Mr. Simonoff as permanent guardians of Ms. Bakhtiar's person and estate. In 2016, Mr. Simonoff became the guardian of both Ms. Bakhtiar's person and estate.

{¶12} Based upon this record, we cannot say the trial court lacked subject matter jurisdiction over the guardianship of Ms. Bakhtiar. Moreover, pursuant to R.C. 2111.04(A)(2), Ms. Bakhtiar was not denied notice of the guardianship proceedings or due process.

{¶13} Accordingly, Attorney Longo's and Attorney Gipson's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE PROBATE COURT ABUSED ITS DISCRETION BY FINDING THAT [ATTORNEY LONGO AND ATTORNEY GIPSON] HAD ENGAGED IN FRIVOLOUS CONDUCT.**

{¶14} In their second assignment of error, Attorneys Longo and Gipson argue the trial court abused its discretion in finding Attorneys Longo and Gipson engaged in frivolous conduct. We disagree.

{¶15} "R.C. 2323.51 and Civ.R. 11 both address the filing of frivolous claims." *In re Guardianship of Bakhtiar*, 9th Dist. Lorain Nos. 16CA011036, 16CA011038, 2018-Ohio-1764, ¶ 17. "The statute and rule differ in that the statute employs an objective test for frivolous conduct while the rule employs a subjective one." *Dietrich v. Core*, 9th Dist. Summit Nos. 30349, 30528, 2023-Ohio-1463, ¶ 10. "R.C. 2323.51 also has a broader reach than Civ.R. 11, as it permits a court to impose sanctions 'against a party, the party's counsel of record, or both.'" *P.N. Gilcrest Ltd. Partnership v. Doylestown Family Practice, Inc.*, 9th Dist. Wayne No. 10CA0035, 2011-Ohio-2990, ¶ 32, quoting R.C. 2323.51(B)(4); *Compare* Civ.R. 11 (allowing courts to impose sanctions only against the filing attorney or pro se party).

{¶16} Civ.R. 11 "requires an attorney to sign all pleadings and further provides that the signature constitutes a warrant that there is good ground for the action." *Clark v. Corwin*, 9th Dist. Summit No. 27524, 2015-Ohio-4469, ¶ 11, quoting *Heron Point Condominium Unit Owner's Assn. v. E.R. Miller, Ltd.*, 9th Dist. Summit Nos. 25861, 2012-Ohio-2171, ¶ 33. If a party willfully violates the rule, the court may issue sanctions. Civ.R. 11. Before a court imposes sanctions under Civ.R. 11, "it must consider whether the attorney who signed the document (1) read it; (2) harbored

good grounds to support it to the best of his or her knowledge, information, and belief; and (3) did not file it for the purpose of delay." *Lable & Co. v. Flowers*, 104 Ohio App.3d 227, 235 (9th Dist.1995). "We review the award of sanctions under Civ.R. 11 for an abuse of discretion." *In re Guardianship of Bakhtiar*, 9th Dist. Lorain Nos. 16CA011036, 16CA011038, 2018-Ohio-1764, ¶ 17. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶17} The analysis of a claim pursuant to R.C. 2323.51(A)(2) "boils down to a determination of[:] (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *P.N. Gilcrest Ltd. Partnership*, 2011-Ohio-2990, at ¶ 32. R.C. 2323.51(A)(2)(a) defines "[f]rivolous conduct[,]" in relevant part, as conduct of a party to a civil action or the party's attorney that satisfies one of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶18} "R.C. 2323.51 does not purport to punish a party for failing on a claim." *Oehler v. McAdams*, 9th Dist. Summit No. 28903, 2019-Ohio-1976, ¶ 12, quoting *Harold Pollock Co., LPA v. Bishop*, 9th Dist. Lorain No. 12CA010233, 2014-Ohio-1132, ¶ 19. Rather, it "must involve

egregious conduct." *Oehler* at ¶ 12. "On appeal, [this court] will not reverse a lower court's decision on whether to award sanctions under R.C. 2323.51 absent a showing of an abuse of discretion." (Alteration sic.) *Slattery v. Seemray, L.L.C.*, 9th Dist. Summit Nos. 30346, 30459, 2023-Ohio-2367, ¶ 34, quoting *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, ¶ 13, quoting *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 139 Ohio St.3d 106, 2014-Ohio-1564, ¶ 10.

{¶19} Here, the trial court cited *Fast Property Solutions, Inc. v. Jurczenko*, 11th Dist. Lake Nos. 2012-L-015, 2012-L-016, 2013-Ohio-60, as being analogous to the present matter. In *Fast Property Solutions, Inc.*, the Eleventh District Court of Appeals affirmed the trial court's grant of Civ.R. 11 sanctions, stating:

> Having reviewed the protracted procedural history of this case and the lengthy decision of the trial court, which thoroughly articulated its rationale for sanctions, we do not find an abuse of discretion of the trial court in sanctioning the Jurczenkos and their counsel, who repeatedly and persistently engaged in conduct that unnecessarily delayed the proceedings and increased the costs of litigation. We admire zealous advocacy, but Attorney Douglass and the Jurczenkos crossed the line separating zeal from patent frivolousness. As the trial court observed, the Jurczenkos last paid rent in August 2007, but the trial on Fast Property Solutions' forcible entry and detainer complaint could not begin until December 18, 2009, due to the defendants' and counsel's delaying tactics in filing numerous pleadings and motions in the municipal court, the common pleas court, the court of appeals, as well as the federal court.

> By engaging in the prolonged litigation, in which the Jurczenkos and their counsel repeatedly raised issues already ruled upon, making arguments not supported by the existing law, and making misrepresentations to the court-in an apparent effort to delay or avoid a trial on the merits of the eviction action-the Jurczenkos were able to reside rent-free for two years in a house owned by the plaintiff, without ever presenting any credible evidence they had the means to purchase the home.

*Id.* at ¶ 61-62.

{¶20} The record before us, similar to that in *Fast Property Solutions, Inc.*, also supports the trial court's well-reasoned and lengthy decision granting sanctions, pursuant to Civ.R. 11 and

R.C. 2323.51, to Mr. Simonoff. This record is replete with repetitive and repeatedly overruled arguments, including, but not limited to: (1) Ms. Bakhtiar was not provided notice of the proceedings; (2) the trial court lacked jurisdiction over the guardianship and it is void; (3) Ms. Baktiar was not examined by an independent medical expert; (4) a hearing on the contested guardianship did not take place; and (5) Mr. Simonoff isolated Ms. Bakhtiar and kept her from seeing her family. Further, the record demonstrates numerous repetitive filings, undue delay, increased costs in litigation, and willful conduct that can only serve to harass and injure Mr. Simonoff and Ms. Bakhtiar.

> **{¶21}** As the trial court rightly concluded:
>
> the repetitive filings by [Attorney Longo], [Attorney Gipson][,] and Khashayar [Saghafi] of matters that either have no evidentiary support for them, or are not warranted under existing law, or cannot be supported by a good-faith argument for a modification, extension, or reversal of existing law, but instead are merely repetitively raising the same arguments that have already been addressed and denied in multiple prior ruling, constitutes frivolous conduct under R.C. 2323.51.
>
> It is also clear that the foregoing examples are further violations of R.C. 2323.51(A)(2)(i) because such conduct "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation."
>
> Furthermore, under Civ.R. 11, the [c]ourt concludes that the evidence in this matter is overwhelming that [Attorney] Longo and [Attorney] Gipson have committed "willful violations" of the requirement that their respective signatures on each pleading, motion and document filed with the [c]ourt constitutes their certifications that "to the best of [their] knowledge, information and belief there is good ground to support it; and that it is not interposed for delay."

Notably, at the hearing on Mr. Simonoff's motion for sanctions, Mr. Longo did not present any witnesses or evidence in defense of the motion, although he did cross-examine Mr. Simonoff's witnesses.

{¶22}  Based upon the extensive record before us, this Court cannot say the trial court abused its discretion in awarding sanctions in the amount of $77,975.75 to Mr. Simonoff and against Attorneys Longo and Gipson.

{¶23}  Accordingly, Attorney Longo's and Attorney Gipson's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE PROBATE COURT ERRED BY AWARDING FEES FOR FRIVOLOUS CONDUCT CLAIMS THAT ARE TIME BARRED UNDER R.C. 2323.51(B)(1).**

{¶24}  In their third assignment of error, Attorneys Longo and Gipson argue the trial court erred in awarding sanctions, pursuant to R.C. 2323.51(B)(1), because Mr. Simonoff's motion for sanctions was untimely.  We are not persuaded by this argument.

{¶25}  Pursuant to R.C. 2323.51(B)(1):

> at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

{¶26}  In *Soler v. Evans, St. Clair & Kelsey*, 94 Ohio St.3d 432, 436 (2002),  the Supreme Court of Ohio discussed the meaning of the word "judgment" as referenced in R.C. 2323.51(B)(1), stating:

> The plain meaning of the statute provides a means for an immediate judicial determination and a speedy sanctioning of such abuse. However, the aggrieved party also has the option of waiting until the conclusion of the action to seek sanctions. Construing the word "judgment" as used in the statute to mean a final appealable order serves the remedial purpose of the statute. By enacting R.C. 2323.51, the General Assembly sought to provide a remedy for those harmed by frivolous conduct. Yet, by the same token, the General Assembly manifested its intent that there be a cutoff time for this sanction to be imposed. This purpose is

served by giving the aggrieved party the option of filing the sanctions motion at any time prior to trial or within twenty-one days of the *last judgment* rendered in the case.

(Emphasis added.)

{¶27} Here, as indicated above, Mr. Simonoff filed this motion for sanctions, pursuant to Civ.R. 11 and R.C. 2323.51, on May 26, 2021. Since that time, there have been numerous filings, judgment entries, and appeals. Thus, there has been no "last" judgment issued in this contentious probate litigation spanning more than a decade.

{¶28} Moreover, even if Mr. Simonoff's motion for sanctions had been untimely, pursuant to R.C. 2323.51(B)(1), Attorney Longo and Attorney Gipson have not argued it is untimely pursuant to Civ.R. 11. Indeed, the trial court, in awarding sanctions, did not distinguish between claims under R.C. 2323.51 or Civ.R. 11. Instead the trial court awarded global monetary sanctions in the amount of $77,975.75 to Mr. Simonoff, as Guardian of Ms. Bakhtiar's estate, for violations of "R.C. 2323.51 and [Civ.R. 11] and the frivolous and willful conduct as set forth above."

{¶29} Accordingly, Attorney Longo's and Attorney Gipson's third assignment of error is overruled.

### III.

{¶30} For the reasons stated above, Appellants' three assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

CHARLES V. LONGO, Attorney at Law, for Appellants.

ERIC H. ZAGRANS, Attorney at Law, for Appellee.